COMMONWEALTH *vs.* ANTHONY H. LOFTIS.

Norfolk. February 7, 1972. — April 6, 1972.

Present: CUTTER, SPIEGEL, REARDON, & QUIRICO, JJ.

*Practice, Criminal,* Speedy trial. *Breaking and Entering. Robbery. Evidence,* Presumptions and burden of proof.

G. L. c. 277, § 72A, does not compel a judge to dismiss an indictment if the case is not tried or otherwise disposed of within six months after an application for a speedy trial is received by the court [549]; and in a case where a substantial part of delay in disposition was caused by the defendant and was for his benefit, there was no error in denial of a motion to dismiss based on the delay [549–550].

A jury may find a crime proved beyond a reasonable doubt even though an inference of guilt from facts established is not inescapable or necessary. [551]

Convictions for breaking and entering an apartment with intent to commit larceny and unarmed robbery there were warranted on the

evidence, including evidence of fingerprints showing that the defendant was in the apartment on the day of the crimes. [550–551]

INDICTMENTS found and returned in the Superior Court on June 5, 1969.

A motion to dismiss was denied by *Ford*, J. The cases were tried before *Tomasello*, J.

*Robert V. Greco* (*Reuben Goodman* with him) for the defendant.

*John P. Connor, Jr.*, Assistant District Attorney, for the Commonwealth.

SPIEGEL, J. The defendant was tried and found guilty on three indictments charging him with breaking and entering with intent to commit larceny (46861) and with unarmed robbery (46862–46863).[1] These cases are before us on the defendant's appeal under the provisions of G. L. c. 278, § 33A–33G. We treat with the two assignments of error argued by the defendant.

1. The defendant first contends that his motion to dismiss should have been granted since he was not tried within six months of the receipt of his application for a speedy trial pursuant to G. L. c. 277, § 72A.[2] We sum-

---

[1] There was another indictment (46860) charging rape which was tried together with these indictments. The jury were unable to agree on a verdict on this charge and a mistrial was declared. This indictment was then dismissed. All indictments arose out of the same incident.

[2] General Laws c. 277, § 72A, as appearing in St. 1965, c. 343, provides: "The commissioner of correction, the sheriff, master or keeper of a jail or house of correction, or in Suffolk county, the penal institutions commissioner of the city of Boston, shall, upon learning that an untried indictment, information or complaint is pending in any court in the commonwealth against any prisoner serving a term of imprisonment in any correctional institution, jail or house of correction, which is under his supervision or control, notify such prisoner in writing thereof, stating its contents, including the court in which it is pending, and that such prisoner has the right to apply, as hereinafter provided, to such court for prompt trial or other disposition thereof.

"Such application shall be in writing and given or sent by such prisoner to the commissioner of correction, or such sheriff, master, keeper or penal institutions commissioner, who shall promptly forward it to such court by certified mail, together with a certificate of said commissioner of correction, sheriff, master, keeper,

marize the events relevant to the defendant's contention.

On October 9, 1970, the defendant was arraigned on indictments 46860–46863 and two unrelated indictments (45268–45269). Defence counsel stated that because investigation would require a great deal of time he would not be prepared to try these cases in this session.

On October 29, 1970, the Commonwealth requested that indictments 46860–46863 be placed on the trial list or specially assigned. The trial judge was informed that defence counsel was ill, that he had not yet interviewed the defendant, and that his substitute counsel was not in a position to consent to the continuance. The judge thereupon asked the Commonwealth whether it could, in fairness to the public, move for a continuance until the next scheduled criminal session in February, 1971, without the consent of the defendant. The Commonwealth so moved.

On December 8, 1970, the defendant's application for a speedy trial was received by the Norfolk County clerk.

A criminal session was subsequently scheduled in Norfolk County for January, 1971. On January 6, 1971 (all dates hereafter are 1971), indictments 46860–46863 and 45268–45269 (the two unrelated indictments) were called and, upon defence counsel's request, set down for the next trial session in February. Defence counsel represented at this time that he might request an independent expert fingerprint analysis. The judge stated that by January 25 he expected to hear any motions concerning the fingerprints and another matter involving

---

or penal institutions commissioner, stating (a) the term of commitment under which such prisoner is being held, (b) the amount of time served, (c) the amount of time remaining to be served, (d) the amount of good time earned, (e) the time of parole eligibility of such prisoner, and (f) any decisions of the board of parole relating to such prisoner. Said commissioner of correction, sheriff, master, keeper, or penal institutions commissioner shall notify the appropriate district attorney by certified mail of such application to the court.

"Any such prisoner shall, within six months after such application is received by the court, be brought into court for trial or other disposition of any such indictment, information or complaint, unless the court shall otherwise order."

out of State alibi witnesses. No motions were filed or argued on January 25.

On February 3 the cases [3] were called for trial. The Commonwealth stated that it was prepared for trial, and the cases were placed on the list for February 8.

On February 8 the Commonwealth again stated that it was ready for trial. Defence counsel at this time presented motions for an independent fingerprint analysis and for identification procedures "used" by the Commonwealth.

The judge was obviously concerned with the status of the speedy trial motion, and asked whether the defendant would state in open court that a continuance from February to April would be on his motion without prejudice to the Commonwealth. Defence counsel, however, was unwilling to do this. The judge then stated: "We will put it on for second call and reconsider your position. Frankly, I realize that you have a problem but you place the Court in an impossible position. You need time for investigation. At the same time you don't want to move for a continuance. The Commonwealth is ready for trial, I assume?" At the second call, defence counsel agreed that these matters might be set down for trial, but would not commit himself to a date which would be convenient for him. Eventually, by agreement of the parties and with the judge's consent, all of the indictments were set down for February 18, at which time indictments 45268–45269 would be tried and discussion would then be held on the progress of the other charges.

On February 18, however, only indictments 46860–46863 were called. Defence counsel pointed out that the Commonwealth had promised to proceed first on indictments 45268–45269. These were then placed on the trial

---

[3] Although the transcript for February 2, 3 and 8 indicates that indictments 45268–45269 were called by the clerk, it is apparent that the judge and the parties regarded all six indictments as before the court.

list with the notation that the parties be prepared to proceed on twenty-four hours notice.

On April 5, 6 and 7 all six indictments were called but no trial was held.[4]   On April 12, the defendant pleaded guilty on indictments 45268–45269.  Indictments 46860–46863 were not called again until June 8, when the defendant moved to dismiss them.  On July 1, the motion was denied.  The trial commenced on July 20.

Our examination of the transcripts of the pre-trial proceedings leads us to conclude that there was no error in the denial of this motion.  Although defence counsel was careful never formally to request a continuance, it is clear that much of the delay in this case was for the benefit of the defendant.

General Laws c. 277, § 72A, does not compel a judge to dismiss an indictment if the case is not tried or otherwise disposed of within six months after an application for a speedy trial is "received by the court."[5]

Such a construction would enable a defendant to play, as the defendant did here, the game of "Heads I win, tails you lose."  We do not believe that the Legislature intended to have the statute so construed.  Perhaps it is advisable in situations such as in the instant cases for a trial judge to compel a defendant either to move for a continuance or to stand trial.  If the defendant moves for a continuance, it would seem prudent for the judge, in allowing such a motion, specifically to order an extension of the statutory period.  In any event, in the circumstance of these cases, it would be unconscionable to permit the defendant to take advantage of a situation

---

[4] The record does not appear clear as to the cause of the delay.  We infer, however, that the delay was not through the fault of either of the parties.

[5] We note that the defendant, in his brief, concedes that "[t]he statute does not explicitly provide that prosecution shall be barred if there is no trial within six months."  However, he argues that "such a remedy must be implied or the right would be meaningless."  The converse to this argument is that the concluding phrase in the statute, namely, "unless the court shall otherwise order," would be meaningless if we were to follow the defendant's contention.  This we decline to do.

where a substantial part of the delay in the disposition of the cases was obviously caused by him and, in addition, was for his benefit. *Shepherd* v. *United States*, 163 F. 2d 974, 976 (8th Cir.). See *People v. Lanigan*, 22 Cal. 2d 569, 578–580. Specifically, since the Commonwealth moved for a continuance from October 29, 1970, to the February, 1971, session to accommodate the defendant, the statute should not be read to run against it during this time. Similarly, the defendant's motions on February 8 were the cause of delay until February 18, and he should not be permitted to have the benefit of now claiming the running of the statute during that period. It therefore follows that July 20 was a timely date for the trial.

2. The defendant's second contention is that the evidence was insufficient to warrant the convictions, and thus his motion for directed verdicts should have been allowed. We summarize the evidence, largely on the basis of the presentation in the defendant's brief, which was accepted by the Commonwealth. On April 19, 1969, four black men broke into the Brookline apartment of one Peter Gross. Gross and his fiancée, one Elizabeth Snider, were there watching television at the time. The men kicked Gross in the mouth and dragged Miss Snider to another room where each of the four raped her. They took from Miss Snider an engagement ring worth approximately $1,500 and took from Gross a watch, $10, and an old driver's license. After the men left, Miss Snider went across the hall and asked the neighbors to call the police who, upon arriving, dusted the area for fingerprints. Gross observed that a kitchen window over the kitchen table was open. One of the Brookline policemen present, Detective Richard Sullivan, testified that he ascertained that this window was the point of entry on the break, and that he "was able to locate two latent fingerprints of value." "They were located at a distance that would be in conjunction with a person having come through the window and placing . . . [his] right hand on the center of the table." A fingerprint expert testified

that nine points of similarity between the defendant's prints and those found on the kitchen table were sufficient to make a positive identification.

The defendant does not contest the reliability or the admissibility of the fingerprint evidence. See *Moon* v. *State,* 22 Ariz. 418; *People* v. *Jones,* 257 App. Div. (N. Y.) 5. He argues that the fingerprints show only that he was present in the apartment sometime on April 18, 1969.[6] The defendant further contends that since the fingerprints are consistent with the possibility that he was present in the apartment "legitimately, or . . . illegitimately, in the course, for instance, of a trespass," they do not establish that he committed the crimes involved in this appeal. We see no substance to this argument. "A jury may find a crime proved beyond a reasonable doubt even though the inference of guilt from the facts established is not inescapable or necessary." *Commonwealth* v. *Ehrlich,* 308 Mass. 498, 500. In *Commonwealth* v. *Dubois,* 353 Mass. 223, 224–225, an elderly widow testified that the defendant, whom she identified, came to the door of her house, requested a glass of water, and, after she had given it to him, followed her into the house and raped her. The Commonwealth's case rested on the victim's identification of the defendant and a fingerprint found on the drinking glass. We there stated that even without the eyewitness identification, the jury were justified in finding the defendant guilty of rape. Here, too, the jury's verdicts of guilty were fully warranted. The defendant's motion for directed verdicts was correctly denied.

*Judgments affirmed.*

---

[6] Gross testified that he had seen his roommate wash the kitchen table on the morning of April 18, 1969, with a "sponge, soap and water." Thus the time during which the fingerprints could have been imposed was limited to the day of the crime.