COMMONWEALTH *vs.* FRANKLIN D. HORNE.

Norfolk. November 6, 1972. — January 4, 1973.

Present: TAURO, C.J., REARDON, QUIRICO, KAPLAN, & WILKINS, JJ.

*Practice, Criminal,* Speedy trial, Waiver. *Constitutional Law,* Speedy trial. *Waiver.*

Failure of the defendant in a criminal case promptly to press a motion by him for a speedy trial does not of itself show a waiver of his right to a speedy trial, but is only one factor bearing on the issue of waiver. [741–742]

There was no error in denial of a motion to dismiss indictments based on failure of the Commonwealth to bring the defendant to trial in a period of about three years and four months between the time of the indictments and the time the motion was made where it appeared that for a substantial part of that period it was impractical to obtain the defendant's presence in Massachusetts because of pendency of an unrelated Federal criminal proceeding against him, in which he received a sentence to long imprisonment; that after such sentence he filed a motion for speedy trial of the Massachusetts indictments and was promptly brought before the Superior Court, but the cases were continued and later the indictments were filed at the request of his counsel; and that subsequently the Federal conviction was reversed and on a second trial of the Federal case the defendant was acquitted, whereupon the Commonwealth commenced rendition proceedings which the defendant opposed until he was returned to Massachusetts shortly before he filed the motion to dismiss. [743–745]

On the record of a criminal case, there was no merit in an assertion by the defendant that a delay in bringing him to trial prejudiced him by impairing his ability to present a defence of insanity. [745–746]

INDICTMENTS found and returned in the Superior Court on June 9, 1967.

A motion to dismiss the indictments was heard by *Hennessey, J.*

*Robert V. Greco* for the defendant.

*John P. Connor, Jr.,* Assistant District Attorney, for the Commonwealth.

TAURO, C.J. The defendant appeals under G. L. c. 278, §§ 33A–33G, from convictions upon indictments charging breaking and entering in the nighttime with intent

to commit larceny (Indictment No. 42632), kidnapping (Indictment No. 42633), armed robbery (Indictment No. 42634), assault and battery by means of a dangerous weapon (Indictment Nos. 42635 and 42636) and escape (Indictment No. 42637). The indictments were returned June 9, 1967, in the Superior Court in Norfolk County. The actual trial on these indictments did not begin until June, 1971. The only error assigned and argued was the denial of the defendant's motion to dismiss the indictments. The defendant contends that the failure of the Commonwealth to try the defendant between June 9, 1967, and October 13, 1970, deprived him of his constitutional right to a speedy trial guaranteed by art. 11 of our Declaration of Rights and the Sixth Amendment to the Constitution of the United States, applicable to the States under the Fourteenth Amendment. *Commonwealth* v. *Hanley*, 337 Mass. 384, cert. den. sub nom. *Hanley* v. *Massachusetts*, 358 U. S. 850. *Commonwealth* v. *Chase*, 348 Mass. 100. *Klopfer* v. *North Carolina*, 386 U. S. 213. *Barker* v. *Wingo*, 407 U. S. 514.

The following pertinent facts appear from the record before us. The defendant escaped from the Correctional Institution at Walpole on May 21, 1967. All the charges for which he was later indicted arose from activities following his escape. On May 29, 1967, the defendant was arrested on unrelated charges in West Virginia and transferred to Kentucky. The district attorney of Norfolk County (district attorney) learned on June 6, 1967, that the defendant was in Kentucky being held for grand jury action by Federal and Kentucky authorities. On June 9, the defendant was indicted in Norfolk County on the charges stemming from his escape. The defendant was transferred from Kentucky to Tennessee where he was indicted on an unrelated kidnapping charge October 3, 1967. On October 4, 1967, at the first criminal session after the Massachusetts indictments were returned, a default was entered and a capias issued against the defendant. On March 1, 1968, the Norfolk County

indictments were filed pending the defendant's apprehension. On March 5, 1968, the district attorney wrote a letter to the Tennessee authorities which enclosed a capias and requested information as to when the defendant would be released and on the disposition of charges against him. The defendant was thereafter tried and convicted in Tennessee on May 9, 1968. In July of 1968, the defendant began serving a thirty-six and one-half years Federal sentence in Atlanta. After learning on July 30, 1968, that the defendant was beginning to serve his sentence, the district attorney lodged a capias against him in August, 1968. On December 12, 1968, the defendant filed a motion moving for a speedy trial. In accord with G. L. c. 277, § 72A, the defendant was brought promptly before the court on February 19, 1969, as which time the case was continued for trial. On March 13, 1969, the defendant appeared in Norfolk Superior Court at which time the indictments were filed without a change of plea with the defendant's consent. The Commonwealth agreed to the allowance of defence counsel's request that the indictments be filed because the defendant, age thirty-five, was then serving a thirty-six and one-half year sentence. However, the district attorney removed the indictments from the file and had a capias lodged against the defendant on June 9, 1969, after learning that the defendant's Federal conviction had been reversed and a new trial granted. On October 7, 1969, after a second trial on the Federal charges, the defendant was acquitted on grounds of insanity. The Commonwealth then commenced rendition proceedings which the defendant opposed until August 23, 1970, at which time the defendant was returned to this Commonwealth. On October 13, 1970, the defendant filed a motion to dismiss the indictments based on his claim that the delay between June 9, 1967, and October 13, 1970, violated his constitutional right to a speedy trial. After a full hearing on the motion the Superior Court judge denied the defendant's motion to dismiss on May 25, 1971. The delay between October, 1970, and May,

1971, was for the most part due to the defendant's temporary transfer to a Federal institution in Georgia. This was upon his motion for purposes of prosecuting civil actions brought by him in that jurisdiction, and he stipulated that the delay so caused was not material in the instant case.

Before reaching the merits of the defendant's claim, we must first decide whether he has waived his right to a speedy trial by his failure to seek action on his motion for a speedy trial and his acquiescence in his counsel's motion that the indictments be filed.  Our decisions in *Commonwealth* v. *Marsh,* 354 Mass. 713, 718, and *Commonwealth* v. *Lauria,* 359 Mass. 168, lend strong support to the Commonwealth's argument that "[i]n order to be effective and negate an implication of waiver, the demand for trial should be made to the court and not merely the district attorney or the clerk's office."  We established a strict demand-waiver rule in the *Marsh* case, *supra,* which, if followed, would warrant a finding that Horne waived his right to a speedy trial by his failure to present his motion for a speedy trial to a judge. As stated in the *Marsh* case, "Defendants who are interested only in laying the groundwork for dismissal in the event of delay should not prevail merely because a motion had previously been filed.  Where counsel files motions for trial, but does not seek action on them, it is a reasonable inference that the defendant prefers no trial . . . .  Waiver of the right to a speedy trial is implicit in such inaction," *supra,* at 718.  In the *Lauria* case, *supra,* we noted that "[t]o negative the implication of waiver, Lauria's motion for a speedy trial should have been promptly presented to a judge."  (P. 480.)

However, the United States Supreme Court rejected this automatic demand-waiver rule in *Barker* v. *Wingo,* 407 U. S. 514, 528.  The Supreme Court noted, "The nature of the speedy trial right does make it impossible to pinpoint a precise time in the process when the right must be asserted or waived, but that fact does not argue for placing the burden of protecting the right solely on

defendants. A defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process." (P. 527.) Therefore, the court rejected "the rule that a defendant who fails to demand a speedy trial forever waives his right. This does not mean, however, that the defendant has no responsibility to assert his right. We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right." (P. 528.) The Supreme Court reasoned that such a formulation avoids the rigidities of the demand-waiver rule and the resulting possible unfairness in its application. The court concluded in the *Barker* case that every speedy trial case must be considered on an "ad hoc" basis where factors such as "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant" (P. 530) should be considered in determining whether a particular defendant has been deprived of his right. (P. 530.)

Thus, *Barker* v. *Wingo, supra,* creates a balancing test which treats the defendant's failure to assert his speedy trial right as one of the many factors to be considered in the "difficult and sensitive balancing process." (P. 533.) The rationale in the *Barker* case compels us to deviate from the strict demand-waiver rule we adopted in *Commonwealth* v. *Marsh, supra,* where we held that the defendant waived his speedy trial right despite his motion demanding one because of his failure to bring his motion to the trial court's attention. As we understand the *Barker* case, its holding precludes a finding of waiver even in those cases where the defendant fails to make a motion for a speedy trial, unless the prosecution can "show that the claimed waiver was knowingly and voluntarily made." [1] (P. 529.)

---

[1] However, the policy considerations noted in the Marsh case concerning defendants "interested only in laying the groundwork for dismissal in the event of delay," *supra,* at 718, still may be considered in the delicate balancing test we must make in determining whether the defendant's speedy trial right has been denied.

The facts of this case present a close question as to whether Horne's failure to press his motion for a speedy trial and his acquiescence in the filing of the indictments constituted a knowing and voluntary waiver of his right to a speedy trial. However, even if we assume that the prosecution did not satisfy its burden of showing that Horne intentionally relinquished a known right, see *Johnson* v. *Zerbst*, 304 U. S. 458, 464, our consideration of the reason for the delay between indictment and trial and the claim of prejudice involved lead us to conclude that the defendant's constitutional right to a speedy trial was not denied.

## LENGTH AND REASON FOR DELAY.

The three year four month delay between indictment and the defendant's motion to dismiss is sufficient to "trigger" a careful examination of the reasons for the delay. The mere fact that the defendant was in custody in another jurisdiction after his escape from the Correctional Institute at Walpole does not affect his right to a speedy trial on the charges stemming from the escape. The key issue presented by the facts of the instant case is whether the Commonwealth took "reasonable action to prevent undue delay in bringing a defendant to trial." *Commonwealth* v. *McGrath*, 348 Mass. 748, 752.

The reasonableness of the Commonwealth's actions must of necessity be determined on consideration of the special circumstances of each case. In the *McGrath* case, the defendant was merely serving out a sentence in a Federal prison. However, most of the delays in the instant case came from the fact that there were contemporaneous Federal proceedings against the defendant which made it impractical for the Commonwealth to obtain the defendant's presence in Massachusetts without disrupting these concurrent Federal proceedings. Our review of the facts leads us to conclude that the Superior Court judge was warranted in finding that "[n]o evidence appeared before me that it was practical

or even possible during this period for the Massachusetts authorities to obtain the custody of the defendant for a sufficient number of weeks or months to accomplish the trial of the Massachusetts indictments." As soon as the district attorney learned that the defendant's Federal trial had ended and the defendant had started to serve a thirty-six and one-half year sentence, he lodged a capias against him (August, 1968). When the defendant demanded a speedy trial on these indictments, he was promptly brought before the court. Even if the defendant's acquiescence in the filing of the indictments did not constitute a total waiver, the defendant must have realized that filing would cause further delay before he was actually brought to trial. The evidence supports the judge's finding "from the entire proceedings including the fact that competent counsel had explained to the defendant (before March 13, 1969) the meaning of filing with a change of plea to guilty . . . that the defendant, in moving by his own counsel to have the indictments filed while representing to the court that the defendant was serving a 36½ year federal sentence, appreciated that the trial of the indictments . . . [was] being indefinitely deferred in recognition only of the long federal sentence then existing." Thus, the defendant was responsible for this three month delay caused by the filing of the indictments.

As soon as the district attorney learned that the defendant's conviction had been reversed and a new trial had been ordered on the Federal charges, he removed the indictments from the file and a capias was lodged against the defendant at the Federal penitentiary (June, 1969). Once again a four month delay was caused by the necessity of waiting until the defendant's new Federal trial had been completed. The district attorney's deference to Federal proceedings was justified. A trial under the Massachusetts indictments would not have been likely if the second Federal trial had resulted in a guilty verdict for the defendant and he had received a sentence similar in length to the first Federal sentence

of thirty-six and one-half years. This sentence led to the original agreement to file the Massachusetts indictments. After the defendant's acquittal in the second Federal trial, the district attorney moved promptly to bring the defendant to trial. A further lengthy delay (November, 1969-August, 1970) was caused by the defendant's opposition to rendition proceedings instituted by Massachusetts. The trial judge found that "[t]he district attorney brought the defendant before the court and moved for trial at the first criminal session of the court after the defendant's return to Massachusetts was finally procured."

Thus, we conclude that the delay in the defendant's trial (approximately two years and four months) caused by the Commonwealth[2] between indictment and trial was justified by the Commonwealth's decision to defer trial of the defendant until two contemporaneous Federal trials on unrelated Federal indictments had been completed. Such deference to another jurisdiction appears to be reasonable where different jurisdictions have indicted the same individual for different crimes. In this case, the Commonwealth's decision to defer to the jurisdiction that had immediate custody of the defendant was reasonable and does not constitute an unreasonable denial of a speedy trial. See Commonwealth v. Domanski, 332 Mass. 66, at 72–73.

## PREJUDICE.

The defendant contended that he was prejudiced by the delay because it impaired his ability to present his insanity defence. An examination of the defendant's argument reveals that it is entirely without merit and not deserving of serious discussion. In effect, this claim

---

[2] We need not consider the other delays caused by the filing of the indictments (three months) and the defendant's opposition to rendition proceedings (nine months). As we noted in Commonwealth v. Loftis, 361 Mass. 545, 549–550, "it would be unconscionable to permit the defendant to take advantage of a situation where a substantial part of the delay in the disposition of the cases was obviously caused by him."

rests on a letter written by Dr. Rosenwald to the court. Dr. Rosenwald noted, "[I]t is my opinion that any opinion on my part as to the defendant's psychiatric condition on May 21, 1967, would have to be based largely on the previous psychiatric examinations and their consistency with the findings of a current examination. . . . [T]he closer to . . . [May 21, 1967] that the examination occurred the more certainty it would have, but after a period of five to six months it is most unlikely that further delay would make any difference." Since the defence did present an expert witness, Dr. Dearman, who testified that the defendant was a psychopath on May 21, 1967, the prejudice caused by delay was the loss of possible corroborating psychiatric testimony. His claim of prejudice is based on the speculation that if psychiatrists had examined him within six months of his escape, they might have assisted in his defence. This type of speculative evidence is totally insufficient to show that the delay actually impaired the defendant's defence; especially where the potential harm was not the product of an unreasonable delay by the Commonwealth in bringing the defendant to trial.

In the absence of any unreasonable delay or serious prejudice to the defendant's defence, we find that the defendant's right to a speedy trial was not denied.

*Judgments affirmed.*