COMMONWEALTH *vs.* DAVID L. PARRY.

Plymouth.   April 17, 1973. — February 6, 1974.

Present: ROSE, KEVILLE, & ARMSTRONG, JJ.

*Practice, Criminal,* Speedy trial; Exceptions: failure to save exception;
    Sequestration of witness; Mistrial; Security measures in courtroom;
    Fair trial. *Constitutional Law,* Speedy trial. *Larceny.*

There was no deprivation of the defendant's constitutional right to a
    speedy trial in a criminal case where it appeared that a substantial
    part of a delay of one year between indictment and trial was due to the
    defendant's seeking certain discovery and reasonable misunder-
    standings with respect thereto, and no prejudice to the defendant
    through the delay was shown. [732-734]
The defendant in indictments was not deprived of his rights under G. L.
    c. 277, § 72A, in that he was not given the notice in writing provided
    therein where it appeared that he was assigned counsel and arraigned
    on such indictments within five days after they were handed
    down. [734-735]
No question of law concerning the admission of certain testimony at a
    criminal trial was brought to this court by a bill of exceptions not
    showing that an exception to the admission was saved. [735]
No abuse of discretion on the part of the judge at a criminal trial was
    shown where, after he had ordered that a witness be sequestered, he
    allowed her to remain in the court room between two portions of her
    testimony, whereby she heard other witnesses identify certain articles
    before identifying them herself. [735-736]
At a trial for larcenies at which a police officer testified that about a year
    after the commission of the larcenies he took "mug shots" of the
    defendant which were introduced in evidence to show a changed
    appearance of the defendant in explanation of inability of the victim
    of the larcenies to identify him, there was in the circumstances no
    prejudice to the defendant through the officer's reference to "mug
    shots." [736-737]
Declaration of a mistrial was not required in a criminal case in the
    circumstances by reason of a reference to the police in a statement by
    the prosecutor in his opening to the jury that the police had obtained a

comparison of known fingerprints of the defendant with prints found on articles material to the case. [737-738]

A conviction of larcenies was warranted on evidence that one representing himself to be the Commissioner of Banks requested a woman to assist in a bank investigation by withdrawing money from her bank account and giving it to a purported agent of the Federal Bureau of Investigation, who would mark the money and return it to her in envelopes, that she acceded to such request, that the envelopes so returned to her contained only newspaper clippings, and that fingerprints found on the clippings and envelopes matched fingerprints known to be those of the defendant. [731-732, 737-738]

Refusal to declare a mistrial in a criminal case by reason of the fact that at some point in the trial the defendant was brought into the court room in handcuffs in the presence of the jury was not error in the circumstances where the defendant did not move for the mistrial until the conclusion of the charge to the jury. [738-739]

INDICTMENTS found and returned in the Superior Court on May 13, 1971.

The cases were tried before *Spring,* J.

*Michael A. Paris* for the defendant.

*Alfred R. Shrigley,* Assistant District Attorney (*A. Stanley Littlefield,* District Attorney, with him) for the Commonwealth.

ROSE, J. The defendant was indicted on seven counts of larceny, tried before a jury and convicted on all counts. A brief summary of the evidence in the case, as presented in the defendant's bill of exceptions, is as follows: On several dates in December, 1969, one Lydia Gibbs received telephone calls from a person who identified himself as the Commissioner of Banks of Massachusetts. The caller asked Gibbs to assist in a bank investigation by withdrawing money from one of her bank accounts and turning the money over to a man said to be an agent of the Federal Bureau of Investigation (F. B. I.). Gibbs was told that the F. B. I. agent would mark the money and return it to her in an envelope. After following the caller's instructions with respect to six of her bank accounts, Gibbs became suspicious and, upon investigation, discovered that the envelopes which she had been given contained newspaper clippings instead of money. Fingerprints found on the

clippings and the envelopes were forwarded to the F. B. I., which matched them with prints known to belong to the defendant.

1. The defendant's first exception concerns the alleged denial of his right to a speedy trial, as guaranteed by art. 11 of the Declaration of Rights of the Massachusetts Constitution and the Sixth Amendment to the United States Constitution. The relevant dates are as follows: On May 13, 1971, the defendant was indicted and on September 23 he filed a motion for speedy trial. The motion was heard and allowed on September 28. At the same time, the motion judge granted the defendant's request for production of scientific reports prepared by the F. B. I. relating to fingerprint identification. The defendant was given an opportunity to stand trial in the Superior Court session then in progress in Plymouth County, but refused on the ground that he needed the F. B. I. fingerprint report[1] in order to prepare his defense. Consequently, the case was set down for trial during the court's next session in Plymouth County (January, 1972) over the defendant's exception. During the remainder of 1971, the defendant corresponded with the district attorney in an effort to secure the fingerprint report in the hands of the F. B. I. On January 13, 1972, he wrote to the district attorney to ask that the report in question be obtained and the case set down for trial during the court session then in progress.

On January 19, the defendant received one F. B. I. report and was told by the district attorney that the "press of court business" might prevent his case from being tried until the next court session, in May. By a letter dated January 25, the defendant informed the district attorney that the F. B. I. report which he had received was not what he had requested[2] and asked for more specific information. Two

---

[1] In the defendant's bill of exceptions, the F. B. I. report is referred to in both the singular and the plural. In this opinion, we shall employ the singular form exclusively.

[2] The difference between what the motion judge's discovery order required and what was supplied to the defendant on January 19, 1972, is not apparent from the bill of exceptions. The judge who allowed the defendant's motion for discovery

days later, on January 27, the defendant wrote to the district attorney, reminding him that his motion for speedy trial had been allowed in September and demanding that his case be added to the January trial list. No action was taken on the defendant's request, but on February 3 a defense motion to dismiss the indictments for lack of a speedy trial was heard and denied and the case was assigned for trial on May 8, 1972. The defendant took exception to the denial of his motion, arguing that he had been ready for trial in January and would have waived his right to the F. B. I. report (there is nothing in the record to indicate that he had offered to do so) in order to have his case heard during the January session. The defendant renewed his motion to dismiss on May 1, 1972; it was denied at the commencement of his trial, on May 8.

"The test which must be employed in balancing the rights and conduct of the prosecution and the defendant in a speedy trial case requires an 'ad hoc' consideration of each of the following factors: '[1] Length of delay, [2] the reason for the delay, [3] the defendant's assertion of his right, and [4] prejudice to the defendant.' *Barker* v. *Wingo,* 407 U. S. 514, 530 (1972). *Commonwealth* v. *Horne,* 362 Mass. 738, 742 (1973)." *Commonwealth* v. *Steadman, ante,* 541, 543 (1973). The key issue in this case is "whether the Commonwealth took 'reasonable action to prevent undue delay in bringing [the] defendant to trial.'" *Commonwealth* v. *Horne,* 362 Mass. 738, 743 (1973), quoting *Commonwealth* v. *McGrath,* 348 Mass. 748, 752 (1965).

One year elapsed between the date of the defendant's indictments and the date of his trial. Four months of this time was attributable to the defendant's request for discovery and a further four months to the delay stemming from the defendant's misunderstanding with the district

referred to "the F.B.I. fingerprint report" and we are unable to say that the report supplied on January 19 did not comply with this order. The defendant, in a letter to the district attorney dated October 21, 1971, did request to view the "real evidence and the print identification charts from Washington" but did not challenge the district attorney's response, which referred merely to "report" (see note 1), a term which was used by both parties in the remainder of their 1971 correspondence.

attorney as to what was comprehended in the court's allowance of the defendant's discovery motion. It does not appear from the bill of exceptions that the Commonwealth acted negligently or in bad faith in providing the F. B. I. report. See *Barker* v. *Wingo, supra,* at 531; *Commonwealth* v. *Horne,* 362 Mass. 738, 743 (1973). Having been notified by letter dated January 25 that the report was unacceptable to the defendent, and knowing that his trial had been postponed since September to permit discovery, the Commonwealth was justified in assuming that the defendant did not want a January trial at the expense of his right to discovery and therefore in leaving his case off the trial list for that month.

As regards the other factors stressed in *Barker* v. *Wingo,* we note, first, that the defendant asserted his right to a speedy trial in a timely manner. We discern no prejudice to the defendant as a result of the four month delay.[3] It appears from the defendant's brief that he was imprisoned for one or more other offenses during the relevant period. We find no evidence to support the contention that as a result of any delay he suffered "oppressive pretrial incarceration," felt an unusual degree of "anxiety and concern," or was hampered in preparing his defense. *Barker* v. *Wingo, supra,* at 532.

On balance, taking into consideration the relative briefness of the delay in this case, the extent to which the delay was caused by the defendant's requests for discovery and the reasonable misunderstandings relating thereto, and the lack of evidence of prejudice flowing from the delay, we conclude that the defendant was not deprived of his constitutional right to a speedy trial.

2. In addition to his constitutional claim, the defendant argues that he was denied his statutory rights under G. L.

---

[3] The possibility advanced by the defendant that the four-month delay prevented him from being paroled from existing terms of imprisonment or from obtaining sentences concurrent with the sentences he was already serving is unsupported by evidence in the bill of exceptions. See generally *Smith* v. *Hooey,* 393 U. S. 374, 378 (1969), and *Strunk* v. *United States,* 412 U. S. 434, 438-439 (1973).

c. 277, § 72A (as appearing in St. 1965, c. 343), in that he was not notified in writing by the Commissioner of Correction either of the pendency of indictments against him or of his right to apply for trial or other disposition of any such indictments within six months, "unless the court shall otherwise order." We are of the opinion that the purposes of § 72A are served where a defendant is promptly arraigned (thus learning of the new indictments against him) and is continuously represented by counsel (who can advise him of his rights under the statute). In the instant case the defendant was assigned counsel, heard the indictments against him read in open court, and pleaded to them within five days of the date they were handed down. The notice requirements of § 72A were therefore not applicable to his case.[4]

3. The defendant also objected to Gibbs' testimony concerning the calls which she received, contending that this testimony was hearsay. No exception was taken to the admission of this testimony and it is settled that a bill of exceptions which does not disclose the saving of any exception in the court below brings no question of law to this court. *Commonwealth* v. *Underwood,* 358 Mass. 506, 509 (1970). *Commonwealth* v. *Stout,* 356 Mass. 237, 243 (1969). *Commonwealth* v. *Lussier,* 364 Mass. 414, 424-425 (1973). We note in passing that the above-described testimony could not have been hearsay since the Commonwealth was not seeking to establish the truth of the statements contained therein. The testimony was relevant and admissible to show the existence of an illegal scheme to which the defendant was linked, not by Gibbs' testimony, but by the discovery of his fingerprints on the newspaper clippings and envelopes.

4. The defendant also took exception to the trial judge's decision to permit Gibbs to remain in the courtroom between two portions of her testimony, in modification of his prior order that she be sequestered. Because she

---

[4] We note that the defendant filed an application under § 72A on February 10, 1972, and received a trial approximately three months later, on May 8.

remained, Gibbs was able to hear other witnesses identify certain envelopes before identifying them herself. The defendant does not dispute that the initial decision whether to sequester a witness is discretionary with the trial judge (*Zambarano* v. *Massachusetts Turnpike Authy.* 350 Mass. 485, 487 [1966]; *Commonwealth* v. *Blackburn,* 354 Mass. 200, 205 [1968]), but argues that the trial judge abused his discretion by revoking his order.[5] This argument, however, is untenable in light of the long-standing rule that "the making, modifying and revoking of orders relating to the course of the trial shall be left to the discretion of the presiding judge." *Commonwealth* v. *Hall,* 4 Allen 305, 306 (1862).

5. The defendant further excepted to admission of testimony by a local police officer that on November 24, 1970 (approximately one year after the commission of the larcenies) he took fingerprints and "mug shots" of the defendant. The prints were sent to Washington where they were matched with fingerprints appearing on the envelopes and newspaper clippings given to Gibbs. The photographs were introduced at trial to show the defendant's changed appearance, and thus to explain Gibbs' inability to identify him as the person who took her money.

The defendant argues that the officer's reference to "mug shots" was prejudicial because it indicated to the jury that the defendant had a prior criminal record. See *Commonwealth* v. *Nassar,* 351 Mass. 37, 43 (1966); *S.C.* 354 Mass. 249, 258 (1968). Compare *Commonwealth* v. *Gerald,* 356 Mass. 386, 387-388 (1969). While the "mug shots" in question may have been taken in connection with other criminal proceedings against the defendant, there is nothing in the bill of exceptions to show that the jury was aware of such a possibility. Instead, the jurors might well have inferred that the defendant was called in for "mug shots" because he was a suspect in the Gibbs larcenies. In this

---

[5] The defendant does not contend that the trial judge's revocation left him in a worse position than if his motion to sequester had been denied in the first instance.

respect the defendant's situation differs from the facts of the *Nassar* and *Gerald* cases, where the defendants were identified soon after the crimes were committed from preexisting files which, by implication, were made up of photographs of persons with prior criminal records. His exception is therefore without merit.

6. The defendant also took exception to the trial judge's refusal to declare a mistrial following the prosecutor's statement, in his opening, that the local police had forwarded a known fingerprint of the defendant to Washington for comparison with prints taken from evidence in the case. The defendant does not contend that the prosecutor's statement was untrue or that it was improper for him to refer to the fingerprint comparison, but argues that the prosecutor's reference to the police was unnecessary and prejudicial because it indicated to the jury that the defendant had a prior criminal record. We believe that the police officer's testimony at trial adequately explained the source of the fingerprint and dispelled the prejudicial implications, if any, in the prosecutor's remark.

7. The defendant also took exception to the denial of his motion for a directed verdict. He emphasizes that the only evidence linking him to the crime committed against Gibbs was the appearance of his fingerprints on the newspapers and envelopes given to her and argues that on the Commonwealth's evidence his guilt was left to "conjecture or surmise," an insufficient basis for conviction. See *Commonwealth* v. *O'Brien,* 305 Mass. 393, 401 (1940).

It is settled that although the defendant's guilt must be proved to a "reasonable and moral certainty" (*Commonwealth* v. *Webster,* 5 Cush. 295, 319 [1850]; *Commonwealth* v. *O'Brien, supra,* at 400), the inferences leading to a finding of guilt "need not be necessary or unescapable so long as they [are] reasonable and warranted." *Commonwealth* v. *Aronson,* 312 Mass. 347, 352 (1942). See *Commonwealth* v. *Loftis,* 361 Mass. 545, 551 (1972); *Commonwealth* v. *Lussier,* 364 Mass. 414, 420-421 (1973). Here the jury would have been warranted in inferring from the fingerprint evidence that the defendant

was a principal in the larcenies. On this point the facts in this case correspond to those of the *Loftis* case, in which a defendant was convicted of breaking and entering with intent to commit larceny and unarmed robbery on the basis of testimony that his fingerprints were found on a table under the window through which the intruder entered. See *Commonwealth* v. *Dubois,* 353 Mass. 223 (1967). We conclude that the trial judge did not err in refusing to direct a verdict.

8. At some point in the trial, the defendant was brought into the courtroom in handcuffs while the jury was present.[6] At the conclusion of the judge's charge to the jury, the defendant moved for a mistrial because of the incident. The motion was denied and the defendant excepted.

The defendant calls our attention to statements in numerous decided cases that it is desirable, whenever possible, to avoid shackling a defendant during his trial. See *Commonwealth* v. *Agiasottelis,* 336 Mass. 12, 16 (1957); *Commonwealth* v. *Chase,* 350 Mass. 738, 739-740 (1966), cert. den. sub nom. *Chase* v. *Massachusetts,* 385 U. S. 906 (1966); *Commonwealth* v. *Ladetto,* 353 Mass. 746 (1967). However pertinent this principle may be where, as in the cited cases, the defendant makes a request that his handcuffs be removed, it is of little assistance to us here. The responsibility to insure the defendant's presence in the courtroom and to protect the safety of the public by means including the physical restraint of the defendant has been that of the sheriff, subject to the review by the trial judge. See *Commonwealth* v. *Millen,* 289 Mass. 441, 465 (1935), cert. den. sub nom. *Millen* v. *Massachusetts,* 295 U. S. 765 (1935); *Commonwealth* v. *Agiasottelis, supra,* at 16; *Commonwealth* v. *Flynn,* 362 Mass. 455, 464-465 (1972).[7] The

---

[6] Although the defendant states in his brief that a prison guard sat beside him in the courtroom, there is nothing in the bill of exceptions to support this contention.

[7] By its decision in the case of *Commonwealth* v. *Brown,* 364 Mass. 471 (1973), the Supreme Judicial Court has changed prospectively the nature of the trial judge's supervisory responsibilities in instances where physical restraint of a defendant is contemplated and the procedure by which the judge is to discharge his responsibilities.

decision of the defendant in the instant case to withhold his objection until the end of the charge to the jury gave the judge no occasion to review the sheriff's decision.

The only question presented to this court is whether the handcuffing incident deprived the defendant of a "fair trial and due process of law."[8] In view of the paucity of facts presented in the defendant's bill of exceptions, we are unable to conclude that he was so deprived. The trial judge therefore did not err in refusing to grant his motion for a mistrial.

*Exceptions overruled.*

---

[8] The defendant in his brief does not allege a violation of any specific constitutional provision.