Lauriat, Peter M., J.
The defendant, Luis Flores (“Flores”), stands indicted on charges of armed assault to murder (001), and assault and battery by means of a dangerous weapon (002). Flores has now moved, under Mass.R.Crim.P. 13(c), to dismiss both indictments, on the ground that the Commonwealth has failed to prosecute him timely, in violation of his rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and Article 11 of the Massachusetts Declaration of Rights.
BACKGROUND
On August 18, 2004, Flores and the alleged victim met at a convenience store in Framingham. Apparently, they met because the victim wanted Flores to teach him to speak Spanish. While at the store, however, Flores asked the victim if he was attracted to him. The victim said that he was attracted to Flores. The two men then made plans to meet at the victim’s apartment later that day.
The victim returned to his apartment later in the day and found Flores waiting on the building’s steps. They entered the apartment, watched pornographic movies together and had sexual intercourse. They used a condom that was thrown in the trash. The individuals took a shower afterwards. While they were in the bathroom, Flores allegedly took a razor blade and slashed at the victim’s neck. The victim successfully struggled to leave the bathroom and then fled the apartment. Outside, the victim, bleeding profusely from his neck, screamed for help. The police anrived shortly thereafter and found the shower running, a trail of blood from the bathroom to the front door and a condom in the trash can.
The victim described his assailant, and from his description the police department compiled a photographic array. The victim picked Flores out of the array. Flores was subsequently picked up by the police and given his Miranda warnings. Initially, Flores told the police that he had not been to an apartment in *568 Framingham, had not had sex with a Brazilian man, and did not know the victim. After some time, however, Flores told the police that he had been in the apartment, but only to eat some food that he had been offered. Once in the apartment the victim had approached Flores in the bathroom and made sexual advances. Flores claims that he tried to stop the victim’s advances by repeatedly slashing at the victim’s throat with a razor blade.
The Grand Jury indicted Flores on October 24, 2005, and he was arraigned on November 22, 2004. Bail was set at $25,000. The Commonwealth moved for, and received permission to take a buccal swab from Flores. The swab was never taken, however, because on January 5, 2005, United States Marshals physically removed Flores from state custody and transported him to the Moakley Federal Courthouse, apparently pursuant to an order issued by the United States District Court in Florida.[1] Flores was subsequently transported to Florida for trial on federal narcotics indictments and is currently being held at the John E. Polk Federal correctional facility in Sanford, Florida.
Although Flores had been taken by the federal authorities, this court declined to enter a default against him so as to allow the Commonwealth to lodge a detainer against Flores in Florida. Presently, it appears that Flores may be contemplating a plea agreement with federal authorities that could result in a federal sentence of between five and forty years in prison.
DISCUSSION
I.
The Supreme Judicial Court has previously addressed a defendant’s speedy trial rights as they are affected by his incarceration by federal authorities. See generally Commonwealth v. Horne, 362 Mass. 738 (1973); Commonwealth v. McGrath, 348 Mass. 748 (1965). In Commonwealth v. McGrath, the Court held that a defendant’s article 11 rights were not violated so long as the Commonwealth took reasonable action to prevent undue delay in bringing him to trial. 348 Mass, at 752 (emphasis added).
In that case, the defendant had been convicted on federal kidnapping charges in Connecticut and had begun serving a twenty-two-year prison term in a federal penitentiary in Georgia. McGrath, 348 Mass, at 748. Four months after his conviction on the federal charges, a grand jury for Suffolk County indicted the defendant on three unrelated charges. Id. The defendant petitioned the Superior Court for a writ of habeas corpus, but the court noted that it could not issue such a writ because the federal government had exclusive custody of the defendant. Id. at 749.
The federal government then agreed to waive its exclusive right to custody over the defendant, on the condition that the Commonwealth reimburse it for the expenses associated with returning the defendant to the Commonwealth. Id. The district attorney refused to authorize the reimbursement funds, and the writ was therefore dismissed. Id. The defendant then filed a motion to dismiss on the grounds that he was being refused his constitutional right to a speedy trial. Id. The judge denied the motion but reported his decision to the Supreme Judicial Court. Id.
Upon review, the Supreme Judicial Court noted that Article 11 grants defendants the right to a speedy trial even while serving a sentence at a correctional institution in the Commonwealth. McGrath, 348 Mass. at 750, referencing G.L.c. 277, §72A. “But a different problem is presented where, as here, the defendant is serving a sentence in a federal prison. In such a situation the Commonwealth has no right to secure the presence of the defendant before our courts.” McGrath, 348 Mass, at 750. However, it noted that the federal government may waive its right to exclusive jurisdiction under principles of comity. Id.
In McGrath, the federal government had waived its rights, and, in the court’s own words, the Commonwealth was “in a position to bring the defendant to trial.” Id. Ultimately, the Supreme Judicial Court held that the Commonwealth was not taking reasonable actions to ensure a speedy trial because it was refusing to pay the money needed to produce the defendant. McGrath, 348 Mass, at 752. The Commonwealth’s failure to produce a defendant when the federal government has waived exclusive custody, even if costly, violates his right to a speedy trial. Id.
The right to a speedy trial, for prisoners in federal custody, was revisited in Commonwealth v. Horne, 362 Mass. 738 (1973). There, the defendant escaped from a Massachusetts prison and fled the state. On June 9, 1967, he was indicted in Norfolk County on charges stemming from the escape. Id. at 739. He was subsequently indicted, tried, and convicted in Tennessee on two unrelated federal offenses. Id. at 739-40. The defendant in Horne sought to overturn his subsequent conviction in Massachusetts, on the grounds of speedy trial violations, because more than three years had passed between his arraignment date and his conviction. Id. at 740.
The Court, in declining to overturn the conviction, noted that “[t]he mere fact that the defendant was in custody in another jurisdiction after his escape from the Correctional Institute at Walpole does not affect his right to a speedy trial on the charges stemming from the escape. The key issue presented by the facts of the instant cases is whether the Commonwealth took "reasonable action to prevent undue delay in bringing a defendant to trial." Horne, 362 Mass. at 743, citing Commonwealth v. McGrath, 348 Mass. 748, 752 (1965). The Court held that the Commonwealth’s actions did not amount to an unreasonable denial of the defendant’s speedy trial right. Horne, 362 Mass. at 745.
*569 At the most elemental level, the defendants in Mc-Grath and Horne were in the same situationin federal custody, but under indictment for state offenses. Nonetheless, the Supreme Judicial Court held in one case that the Commonwealth had acted reasonably, but in the other instance, that it had not. The Court explained this apparent disparity when it opined that “[i]n the McGrath case, the defendant was merely serving out a sentence in a federal prison.” Horne, 362 Mass. at 743 (emphasis added). By contrast, in Horne, the defendant was involved in pre-trial proceedings in federal court. His involvement, and necessary presence, in those proceedings made it impractical or impossible to remove him to Massachusetts for trial without disrupting the federal proceedings. Id.
Flores contends that the delay in the present case has violated his right to a speedy trial. However, his federal case is currently in the pre-trial stage, and therefore, under Horne, the delay is not unreasonable, and it would be impractical and disruptive to attempt to remove Flores from federal custody at this time. Moreover, it is unlikely that this court has the necessary authority to effect such a removal, if it so ordered, without the federal authorities’ consent.[2]
II.
Rule 36 of the Massachusetts Rules of Criminal Procedure provides that a defendant is entitled to “be tried within twelve months after the return day in the court in which the case is awaiting trial.” Mass.R.Crim.P. 36(b)(1)(C). The return day is the day on which the defendant is arraigned. Commonwealth v. Farris, 390 Mass. 300, 304 (1983). There are, however, events and circumstances that toll the passage of time for purposes of calculating the twelve-month time period. See Mass.R.Crim.P. 36(b)(2).
The time that passes while a defendant is absent or unavailable is excluded from the Rule 36 calculation. See Mass.R-Crim.P. 36(b)(2)(B). “A defendant or an essential witness shall be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained by due diligence or he resists appearing at or being returned for trial.” Id. Flores is being held by federal authorities and, as noted above, this court seriously doubts that it could demand his presence without a waiver from federal authorities. This waiver has not been issued, and the defendant is therefore currently unavailable. He has been unavailable, for purposes of the Rule 36 calculation, since he was seized by federal authorities on January 5, 2005. The time limits under Rule 36 therefore appear to have been tolled.
III.
There remain several issues in this case that need to be addressed and resolved. As previously noted, the federal authorities apparently removed Flores from Massachusetts, where he had been held in the custody of the Middlesex County Sheriff, in default of bail, without giving Flores or the Commonwealth prior notice or an opportunity to be heard. There is no indication that, having done so, the federal authorities will arrange and pay for his return once his federal criminal case is resolved. Unlike the defendant in McGrath, who was never in the Commonwealth’s custody, Flores was in the Commonwealth’s custody when he was removed by federal authorities. It hardly seems equitable to require the Commonwealth to pay for the return of a pre-trial detainee that it had not agreed to release or transfer in the first place, yet absent payment, the federal authorities might well decline to effect his return to the Commonwealth until the completion of any sentence that might be imposed upon his conviction in Florida.
Finally, although Rule 36 is currently tolled because of the defendant’s unavailability, a determination must be made about when the tolling period ends. Does it end when Flores is sentenced for his federal offenses? Does it end when the federal authorities waive exclusive custody of Flores? Answers to these questions must await Flores’ redeliveiy to the Sheriff of Middlesex County and his return to status as a pre-trial detainee.
IV.
Under McGrath and Home, Flores’ involvement in pre-trial proceedings in his federal case would make it impractical and prohibitively disruptive to bring him to Massachusetts for trial. Further, it is unclear whether the court could even effect such a removal without a custody waiver by the federal authorities. These two circumstances negate holding the Commonwealth responsible for failing to take reasonable action to protect Flores’ right to a speedy trial. At the same time however, the court will not find Flores in default and order a default wanrant to be issued where he has not been responsible for failing to appear for his court dates in Massachusetts. Rather, the federal government appears to bear the responsibility for returning Flores to the Commonwealth as soon as possible, as well as the blame, should it ultimately be determined that the charges pending against Flores in the Commonwealth must be dismissed for lack of prosecution due to his enforced absence from the state.
ORDER
For the foregoing reasons, the defendant’s Motion to Dismiss is DENIED WHHOUT PREJUDICE.

Neither this court nor the parties have ever seen or been served with the order from the Florida federal court.

The court notes, however, the irony of the present situation. Federal Marshals removed Flores from state custody, without prior notice or a hearing, while he was in the midst of pre-trial proceedings here, thus creating precisely the same type of disruption to his state trial that the Supreme Judicial Court acknowledged in Home.