## COMMONWEALTH vs. STEPHEN J. ROUKOUS.

Suffolk.   May 13, 1974. — June 27, 1974.

Present: HALE, C.J., KEVILLE, & ROSE, JJ.

*Bail. Practice, Criminal,* Bail, Appeal, Voir dire, Attendance of
witnesses, Requests, rulings and instructions, Charge to jury,
Disqualification of judge. *Evidence,* Judicial discretion, Relevancy
and materiality, On cross-examination, Testimony of accomplice.
*Constitutional Law,* Self-incrimination. *Witness,* Self-incrimina-
tion, Impeachment.

Where the defendant in a criminal case was refused bail in the
Superior Court and sought review of the refusal by a petition
under G. L. c. 211, § 3, in the Supreme Judicial Court, and his
petition was there denied by a single justice, a subsequent waiver
·by the defendant of exceptions taken to the denial by the single
justice precluded any further appellate review of the question of
bail, and the decision of the single justice precluded disturbing a
denial in the Superior Court of a motion by the defendant to
dismiss the indictment grounded on the refusal of bail. [380-382]
No abuse of discretion appeared in excluding, on cross-examination of
a prosecution witness at a criminal trial, questions which were
repetitive or had little, if any, relevance to the issues involved.
[382-383]
It was proper at a criminal trial to exclude questions to a witness for
the Commonwealth on cross-examination intended to impeach him
by suggesting participation by him in other crimes without offer-
ing records of criminal convictions of him under G. L. c. 233,
§ 21. [383-384]
No abuse of discretion appeared at a criminal trial in rulings respect-
ing evidence of inducements for "cooperation" of an accomplice of
the defendant as a principal witness for the Commonwealth. [384]
There was no abuse of discretion at a criminal trial in holding a voir
dire at which a prospective witness for the defense, after stating
his name and address, refused to answer certain further questions
on the ground that the answers might tend to incriminate him,
and, where it appeared that such further questions did call for
incriminating answers, that counsel for the defense intended to ask
only those questions of the witness before the jury, and that sub-

stantial damage to the defendant's case might have resulted had the witness been allowed to testify before the jury, it was then proper to excuse the witness. [384-385]

No error appeared in a criminal case in denial of a motion by the defendant for production of persons, not in the custody of the Commonwealth, as witnesses in his behalf where his counsel at the hearing on the motion did not show the possible relevance or materiality of testimony which could be offered by such persons. [385]

At the trial of an indictment for armed robbery, no error appeared in the charge to the jury in a characterization by the judge of the robbery as a "smooth success," or in a reference by him to an accomplice of the defendant, a principal witness for the Commonwealth, as having "bl[own] the whistle" on the defendant, or in an instruction by the judge that alibi testimony should be "subjected to a rigid scrutiny" where he immediately also stated that all testimony should be so scrutinized, or in his instructions regarding scrutiny of the testimony of the accomplice, or in remarks by him concerning the accomplice's hopes for leniency, or in his instructions regarding reasonable doubt. [386-387]

Where, following trial of some of defendants indicted for armed robbery, another defendant was apprehended and later tried alone, there was on the record nothing to support a contention by the latter defendant that the judge who presided at his trial, who also had presided at the earlier trial of other defendants, gave "the appearance . . . [of having] prejudged the guilt of the defendant," or to show error in denial of a motion to disqualify the judge for the later trial. [387]

INDICTMENT found and returned in the Superior Court on June 9, 1969.

A motion to be admitted to bail and a motion to disqualify were heard by *Roy*, J., and the case was tried before him.

*Robert G. Clark, III,* for the defendant.

*James F. Sullivan,* Assistant District Attorney (*Elizabeth C. Casey,* Assistant District Attorney, with him) for the Commonwealth.

HALE, C.J.    At a jury trial held subject to the provisions of G. L. c. 278, §§ 33A-33G, the defendant was found guilty on an indictment charging armed robbery. Fifteen assignments of error are presented for our con-

sideration,[1] concerning: (1) the refusal of the judge to admit the defendant to bail; (2) restrictions imposed on the scope of cross-examination of a Commonwealth witness; (3) the absence of certain defense witnesses; (4) the judge's charge; and (5) the denial of the defendant's pre-trial motion to disqualify the trial judge.

The essential facts are not in dispute. The defendant and eight others were charged with armed robbery in an indictment returned on June 9, 1969; the robbery was from a Brink's armored truck in Boston on December 28, 1968. Five of the nine men were apprehended and were tried in January, 1971; two others pleaded guilty prior to trial. Two men, including the defendant, remained at large. The defendant was apprehended in Pennsylvania on August 4, 1971, and was tried in May of 1972.

This court considered the appeal of three men who were found guilty at the 1971 trial. *Commonwealth* v. *Dominico,* 1 Mass. App. Ct. 693 (1974). The details of the robbery, which are set out at length in that opinion (*id.* at 696-699), are not at variance with those adduced at the defendant's trial and need not be recited here. Considerable additional evidence of the defendant's involvement in the robbery introduced at his trial was more than ample to warrant his conviction.

1. Having been brought into court on an indictment warrant, the defendant was arraigned on August 20, 1971. He was ordered committed to the common jail without bail on a mittimus. A motion to admit the defendant to bail was filed on November 1, 1971. On December 13, 1971, during a hearing on the motion in the Superior Court, evidence was presented that at the time of his arrest in a Pennsylvania airport the defendant had been wearing a hairpiece[2] and carrying a forged

---

[1] The following assignments of error will be considered: Nos. 1, 3, 7, 8, 22-25, 29, 34-38, and 41. Additional assignments of error, not having been argued, are deemed waived. Rule 1:13 of the Appeals Court, 1 Mass. App. Ct. 889 (1972).

[2] It appears to us from the record that the defendant had not previously been known to wear a hairpiece.

passport, $4,800 in cash, $1,000 in Lebanese currency[3] and some jewelry. Further, the defendant had admitted to the arresting officers that he had reservations on a flight to London that evening. The motion was denied.

Seeking relief under G. L. c. 211, § 3, the defendant filed a petition "For Review of Bail Determination" in the Supreme Judicial Court, which was denied after hearing by a single justice of that court.[4] A bill of exceptions based on that denial was timely filed, and the case was entered in the full court of the Supreme Judicial Court. However, the exceptions were waived on July 10, 1972, and the case was subsequently ordered dismissed.

The defendant argues persuasively that he was entitled to be admitted to bail as a matter of right, and therefore that it was error to have denied his motion to be admitted to bail. We would be inclined to agree (G. L. c. 276, §§ 42 and 58; see *Stack* v. *Boyle*, 342 U. S. 1, 4 [1951]; note, 79 Harv. L. Rev. 1489, 1498-1500 [1966]; note, 7 Suffolk L. Rev. 66, 76-78 [1972]; see also *Commonwealth* v. *Baker*, 343 Mass. 162, 167 [1961]) were the issue now open for our determination.[5] We rule that it is not. Our statutes provide the means by which an aggrieved defendant may seek review of the initial determination with respect to bail. See G. L. c. 276, § 57; c. 248, § 25. See also G. L. c. 211, § 3; Smith, Criminal

---

[3] There was evidence that the defendant was of Lebanese extraction.

[4] The docket entries disclose that a "motion to review bail determination" was filed in the Superior Court on January 21, 1972. It does not appear that any action was taken on that motion, and no question is now raised with respect to it.

[5] In disposing of this question we are not to be understood as agreeing with the Commonwealth's contention that the Massachusetts bail reform procedures enacted in 1971 (St. 1971, c. 473, § 1; amending G. L. c. 276, § 58) make it clear "that bail is not a matter of absolute right in this Commonwealth." The 1971 legislation was not intended to give the courts discretion to deny bail but rather to establish the right of the accused, in most circumstances, to be admitted to bail upon personal recognizance without surety.

Practice and Procedure (1974 pocket part), § 417.25. In this case the defendant began to implement that procedure by filing a petition to review bail determination in the Supreme Judicial Court, but as he waived his exceptions to the denial thereof, thereby precluding any further appellate review on that question, the decision of the single justice that the defendant was not entitled to bail is now binding upon him and upon us.

The defendant also filed a motion in the Superior Court on April 21, 1972, to dismiss the indictment on the ground that he was denied bail. He has assigned as error the denial of that motion. It is settled that such a motion lies to challenge matters such as defects in the institution of the prosecution, defects apparent on the face of the indictment, or the denial of the right to a speedy trial. Smith, Criminal Practice and Procedure, § 552. However, we need not determine whether a challenge to the indictment based on the fact that the defendant was held without bail is within the scope of such a motion as we are of the opinion that the decision of the single justice, unless and until reversed or otherwise modified by a single justice or by the full bench, was conclusive on any subsequent procedure geared toward securing the defendant's release from incarceration.[6] There was no error.

2. The defendant assigns as error the exclusion of several questions put to John J. Kelley, a key witness for the Commonwealth, during cross-examination.[7] We

---

[6] Had the defendant filed a motion for a continuance of the trial alleging that his efforts to prepare his defense had been prejudiced by his failure to be admitted to bail, and had that motion been denied, it is conceivable that (on a showing of prejudice) such action could have afforded a basis for a reversal and order for a new trial. However, as no continuance was sought in this case, we need not pass on the question.

[7] Kelley, one of the nine indicted for the robbery, was one of the two who entered guilty pleas prior to trial. He was a key witness in the 1971 trial of five of those indicted. See *Commonwealth* v. *Dominico, supra.*

have examined the evidence pertaining to each exception to which the assignments of error relate, and we are satisfied that the ruling in each instance was proper.

Certain questions, pertaining to Kelley's employment history and to his being held in custody, were repetitive; the substance of the proffered testimony was elicited without objection at other times during the cross-examination. Other questions, concerning a sale of realty and his involvement with a realty corporation, appeared to have little, if any, relevance to the issues involved in the instant case; their exclusion was a proper exercise of judicial discretion in regulating the broad scope of cross-examination. *Commonwealth* v. *Underwood*, 358 Mass. 506, 513 (1970).

Two rulings concerned questions about Kelley's wife. The first ruling, made at the end of a bench conference, involved the disqualification of spouses to disclose private conversations between them, long recognized in this Commonwealth. G. L. c. 233, § 20, First. Hughes, Evidence, §§ 124 and 125. In any event, the witness subsequently denied having had any conversations with his wife pertaining to the subject of inquiry. The second ruling, which excluded a question concerning the wife's availability to testify, appears to have been based on the form of the question; the question was then rephrased, and the witness testified that she was not "on this continent" at the time.

The remaining questions constituted attempts to impeach the witness by suggesting his participation in other crimes without offering records of his criminal convictions under G. L. c. 233, § 21. For the reasons expressed in *Commonwealth* v. *Dominico*, 1 Mass. App. Ct. 693, 712-713 (1974), involving similar restrictions imposed upon the cross-examination of the same witness (in another trial), the rulings were proper. In this case, as in the *Dominico* case, the extensive cross-examination of the witness Kelley, which revealed his background and character as well as the fact that he was being held in the

custody of Federal officers, that he had been assured that his coöperation would be brought to the attention of the appropriate authorities, and that he had testified at other proceedings, "placed him 'in his proper setting' so that his credibility could be reasonably evaluated by the jury." *Id.* at 719.

In view of the fact that testimony had been elicited as to inducements for Kelley's "cooperation," the judge did not abuse his discretion by limiting the detailed recitation of such inducements sought to be elicited from another witness, an F. B. I. agent. *Id.* at 713-714.

3(a). The defendant assigns as error the judge's excusal of a prospective witness for the defense. The witness, one Appleton, was ordered excused following a voir dire examination during which Appleton answered questions concerning his name and address but declined to answer four subsequent questions (intended to impeach the credibility of Kelley) on the ground that his answers might tend to incriminate him. Counsel for the defendant asked the judge to direct the witness to answer; the judge refused to do so. Counsel then requested permission "to call this man in open court and inquire of him as to the same questions that I have previously propounded to him." The request was denied, and Appleton was excused.

The decision to hold a voir dire examination was a proper exercise of sound judicial discretion. *Commonwealth* v. *Douglas*, 354 Mass. 212, 225 (1968). See *Commonwealth* v. *Martino*, 361 Mass. 720, 721 (1972). The purpose of such an examination is "to ascertain whether inquiry in the presence of the jury would be prejudicial to the . . . [defendant] or productive of relevant testimony." *Commonwealth* v. *Douglas, supra,* at 225. The examination also enables the judge to determine whether, in the setting in which a question is asked, the answer could possibly tend to incriminate the witness. See *Commonwealth* v. *Baker,* 348 Mass. 60,

62-63 (1964); *Murphy* v. *Commonwealth,* 354 Mass. 81, 84 (1968).

In this case it is clear not only that the questions called for incriminating answers (contrast *Gambale* v. *Commonwealth,* 355 Mass. 394, 397-398 [1969], cert. den. 396 U. S. 881 [1969]) but also that substantial damage to the defendant's case might well have resulted had Appleton been permitted to testify before the jury, as the questions propounded concerned his involvement in matters directly related to the robbery for which the defendant was on trial.

No question as to the scope of protection afforded Appleton by the judge's rulings (see *Commonwealth* v. *Douglas, supra,* at 225) is now raised. Counsel for the defendant indicated the purpose for which the testimony was to have been offered and also stated that he intended to ask Appleton only those questions put forth during voir dire. Under those circumstances the excusal of Appleton was entirely proper. Cf. *Commonwealth* v. *Baker, supra,* at 63-64.

(b). The defendant also assigns as error the denial of his motion that Elizabeth and Steven Kelley, the wife and son of the witness John Kelley, be produced as witnesses in the defendant's behalf. At the pre-trial hearing on that motion counsel for the defense made no showing of the possible relevance or materiality of testimony that could be offered by those persons. Neither person was being held as a material witness or under protective custody. Cf. *Commonwealth* v. *Balliro,* 349 Mass. 505, 515-518 (1965). There was no error.

4. Six assignments of error relate to the charge to the jury and the judge's failure to give certain instructions requested by the defendant. Eight exceptions, six of which were directed to specific parts of the charge, are incorporated in these assignments of error. It is well settled that the portions to which exceptions were taken must be examined in context. *Commonwealth* v. *Dominico, supra,* at 720-721.

The defendant attacks the use of two colloquialisms by the judge: his characterization of the robbery as a "smooth success," and his reference to the witness Kelley as having "bl[own] the whistle" on the defendant and others. Even taken by themselves, those expressions were not prejudicial to the defendant; considered in context, the judge's choice of words was, in our opinion, apt.

The judge instructed the jury that alibi testimony should be "subjected to a rigid scrutiny." There was no error in the instruction. *Commonwealth* v. *Webster*, 5 Cush. 295, 319 (1850). *Commonwealth* v. *Redmond*, 357 Mass. 333, 343 (1970). We note also that immediately following the alibi instruction the judge added: "I remind you that the testimony of all the witnesses is to be subjected to a rigid scrutiny." Thus, it cannot be said that the judge was suggesting that the jury should isolate the alibi testimony for special consideration.

There was no error in the instructions regarding the testimony of Kelley. The judge was not required to instruct the jury to scrutinize accomplice testimony with great care, or, as was requested by the defendant, "carefully and with suspicion." *Commonwealth* v. *Dominico*, *supra*, at 720. We note here that the judge did state that if the jury were to find that Kelley would stand to gain by falsely implicating the defendant, then "his testimony should be regarded with very close scrutiny."

With reference to the exception taken to the judge's remarks concerning Kelley's hopes for leniency, we think the interpretation now put upon them by the defendant strains "the judge's language beyond the range of inferences that can reasonably be drawn from it." *Id.* at 721.

Finally, there was no error in the judge's remarks concerning reasonable doubt. He was not required to use the term "moral certainty" in connection with those remarks. *Commonwealth* v. *Costley*, 118 Mass. 1, 23-25 (1875). His instructions reasonably conveyed the meaning of "reasonable doubt," a term which is neces-

sarily incapable of precise definition. We fail to see how those instructions could have misled the jury or prejudiced the defendant. *Commonwealth* v. *Gerald,* 356 Mass. 386, 390 (1969).

5. The defendant argues that his pre-trial motion to disqualify the trial judge should have been allowed. This contention seems to be based on the fact that the judge, having presided at the 1971 trial of five of those indicted with the defendant, gave "the appearance that the court had prejudged the guilt of the defendant." We find nothing in the record of either the pre-trial proceedings or the trial to support such a contention, and we consider the claim to be wholly without merit.

*Judgment affirmed.*