COMMONWEALTH vs. GRACE CAMPBELL
(and two companion cases[1]).

Suffolk.    April 12, 1977. — August 10, 1977.

Present: KEVILLE, GRANT, & ARMSTRONG, JJ.

*Kidnapping. Constitutional Law,* Speedy trial. *Practice, Criminal,* Speedy trial, Disqualification of judge, Charge to jury. *Jury and Jurors. Grand Jury. Evidence,* Other offense, Cross-examination, Opinion. *Error,* Whether error harmful.

Where a prisoner serving a sentence in a correctional institution filed an application for a speedy trial under G. L. c. 277, § 72A, with respect to certain pending indictments but not with respect to a pending indictment for kidnapping because the superintendent of the correctional institution had failed to inform her of the latter indictment, her application under § 72A was treated as encompassing the kidnapping charge. [574-575]
A delay of six months and eighteen days between the time a defendant filed an application for a speedy trial under G. L. c. 277, § 72A, and the commencement of her trial did not require dismissal of the indictment where twenty-five days of that delay were attributable to the defendant. [575-576]
A motion for a speedy trial with respect to pending indictments by a defendant serving a sentence in a correctional institution was treated as an application under the provisions of G. L. c. 277, § 72A, where there was no evidence that the defendant had been informed of her § 72A rights in prison. [577]
A delay of nearly a year between the time a defendant filed an application for a speedy trial under G. L. c. 277, § 72A, and the commencement of her trial did not require dismissal of the indictments where the only portion of the delay attributable to the Commonwealth was less than two months and the remaining continuances granted were within the sound discretion of the court. [577-580]
A delay of twenty-three months between the arrest of a defendant and the commencement of her trial and a delay of fourteen months between the date of a codefendant's indictment and the commencement of trial were both sufficient to trigger an inquiry as to whether either defendant had been denied her constitutional right to a speedy trial. [581-582]
Where it appeared that lengthy delays between a defendant's arrest and her trial and a codefendant's indictment and trial were at most a result of administrative neglect by the Commonwealth rather than an intentional attempt to hamper the defendants, the reasons for the delay provided only limited support for the defendants' consti-

---

[1] Both against Rosalind Kelley.

tutional claims that the delay required dismissal of the indictments.
[582-583]

A defendant who filed an application for a speedy trial under G. L.
c. 277, § 72A, and twice filed motions to dismiss the indictment for
want of a speedy trial and a codefendant who filed similar motions
both adequately asserted their constitutional right to a speedy trial.
[583-584]

A judge at a criminal trial did not err in denying two codefendants'
motions to dismiss the indictments for want of a speedy trial where
the defendants failed to make a clear demonstration of actual preju-
dice resulting from the delay. [584-585]

There was no error in a judge's refusal to dismiss an indictment against
a defendant on the ground that women were systematically under-
represented on the grand jury which indicted her where it appeared
that the grand jury was convened prior to the decision in *Taylor* v.
*Louisiana,* 49 U. S. 522 (1975). [585-586]

The fact that a judge at a criminal trial had, during a previous trial
involving the same defendant, asked a police officer, ex parte, what
sort of people the defendants were and the officer replied that "[t]hey
are animals and they will do anything" did not require him to dis-
qualify himself from the later trial. [586-588]

Evidence relevant to a criminal charge was not rendered inadmissible
merely because it indicated that the defendant might have com-
mitted another crime. [588]

A judge at a criminal trial did not in the circumstances abuse his
discretion in refusing to allow certain cross-examination intended
to show bias of a Commonwealth witness. [588-589]

At a criminal trial, a paraphrased restatement of a witness's testimony
by the judge was not prejudicial error even though his characteriza-
tion of the testimony as being "clear and unequivocal" may not
have been completely accurate. [590]

Although a judge at a kidnapping trial erred in excluding a question
on cross-examination of the victim as to whether the defendant had
"force[d] [him] to do anything against [his] will," the error was
harmless in the circumstances. [590-591]

At a criminal trial, there was no error in the judge's charge taken in
its entirety. [591]

At a kidnapping trial, there was sufficient evidence to warrant a find-
ing that the defendant had participated with a codefendant in com-
mitting the crime. [591-592]

INDICTMENTS found and returned in the Superior Court
on February 10, 1975.

The cases were tried before *Roy,* J.

*Jonathan Shapiro* (*Anne B. Goldstein* with him) for
Grace Campbell.

*Dennis J. LaCroix* for Rosalind Kelley.

*Frances M. Burns,* Assistant District Attorney (*James
M. Lynch,* Legal Assistant to the District Attorney, with
her) for the Commonwealth.

KEVILLE, J.   Grace Campbell (Campbell) was convicted of kidnapping and Rosalind Kelley (Kelley) of kidnapping and assault and battery by means of a dangerous weapon in connection with an incident at the home of Calvin Williams (Calvin) in Roxbury on May 27, 1974. They appeal pursuant to G. L. c. 278, §§ 33A-33G.

Shortly after midnight on that date Campbell, a friend of Calvin's wife (Nancy), appeared at the door of the Williams's apartment and asked to use the bathroom. Either Calvin or Nancy let her in. While Campbell was in the bathroom, Kelley entered the apartment and accused Calvin of raping her sister. She was holding what appeared to be a pistol. When Calvin denied the accusation, he and Kelley began to struggle. Calvin testified that at one point he managed to wrest control of the gun from Kelley and give it to Campbell, who had emerged from the bathroom, but that Campbell handed the gun back to Kelley. Calvin also stated at trial that in the course of the fight Kelley cut him on the forehead with a knife.

After the scuffle, Calvin agreed to go with Kelley to ask her sister whether he had been the rapist. There was some dispute at the trial whether Calvin or Kelley initially suggested the idea of searching out Kelley's sister, but Calvin testified that he decided to go out of fear for himself and his family. He left his apartment at gunpoint with Kelley and Campbell.

Kelley directed Calvin across the street to a blue and white car and ordered him into the back seat with her. Campbell drove. A third woman, thought by Calvin to be Barbara Simpson (Simpson), who had at one time lived with Nancy during the latter's marital separation from Calvin, occupied the front passenger seat. Campbell drove to at least two places. At one of the places a young woman came downstairs, looked at Calvin in the car and said, "That's not the guy." Kelley told Calvin he should be glad he wasn't the one; then the women dropped Calvin at the Forest Hills MBTA station. He walked back to his and Nancy's apartment from there.

Meanwhile, Nancy had left the apartment to go to her

sister-in-law's apartment around the corner to telephone the police. An officer arrived about twenty minutes later and took Nancy back to her apartment in his cruiser. Both Nancy and the officer testified that when they arrived back at the Williams's apartment they saw Simpson carrying a portable television set belonging to the Williamses into a blue and white car. Campbell was sitting in the driver's seat and Kelley was in the back seat. The police officer immediately arrested Simpson and Campbell, but Kelley managed to escape.[2]

Campbell and Kelley were indicted on February 10, 1975, after a probable cause hearing in a District Court, and arraigned on March 11, 1975.[3] At trial, in April, 1976, Campbell was convicted of kidnapping, and Kelley was convicted of kidnapping and assault and battery with a pistol but was acquitted of assault and battery with a knife. Both defendants were sentenced to indeterminate terms at the Massachusetts Correctional Institution at Framingham to be served from and after sentences they were already serving on other convictions. They both argue that they were denied their constitutional and statutory rights to a speedy trial. Campbell also asserts several independent grounds for reversal — underrepresentation of women on the grand jury which indicted her, prejudice on the part of the trial judge, errors of law in the conduct of the trial, and error in the denial of her motion for a directed verdict. We discuss each issue separately.

## SECTION 72A SPEEDY TRIAL CLAIM.

Both defendants argue that it was error for the trial judge to deny their motions to dismiss the indictments for failure to grant a speedy trial pursuant to G. L. c. 277, § 72A.[4] As Campbell and Kelley were both imprisoned as a

---

[2] It does not appear in the record when Kelley was eventually arrested.

[3] Charges against Simpson were dismissed at the District Court level.

[4] General Laws c. 277, § 72A, as appearing in St. 1965, c. 343, provides: "The commissioner of correction, the sheriff, master or keeper

result of convictions in other cases, they satisfy a primary requirement for protection under § 72A. Compare *Commonwealth* v. *Dabrieo*, 370 Mass. 728, 740-741 (1976). Campbell faces another sort of threshold obstacle, however, in that she filed her application only with respect to certain other pending indictments, not for the kidnapping charge leading to the conviction from which she now appeals. Campbell argues that her application should also be considered to cover her kidnapping indictment because the superintendent at M.C.I. Framingham failed to notify her of the kidnapping indictment as required by the statute. We agree. The Commonwealth has not attempted to rebut Campbell's contention that she was not notified of the kidnapping charge. In light of the superintendent's obligation to inform her of the kidnapping indictment and Campbell's assertion of her statutory right with respect to other known indictments, we treat her § 72A application as encompassing the kidnapping charge. See *Commonwealth* v. *Alexander*, 371 Mass. 726, 727-728, n.3 (1977). Compare *Commonwealth* v. *Boyd*, 367 Mass. 169, 177 (1975) (treating a motion for speedy trial as an application under § 72A, in the absence of an indication that the defendant was notified of his statutory rights).

Although we find § 72A applicable to Campbell, we do not believe that its application requires dismissal of the

of a jail or house of correction, or in Suffolk county, the penal institutions commissioner of the city of Boston, shall, upon learning that an untried indictment, information or complaint is pending in any court in the commonwealth against any prisoner serving a term of imprisonment in any correctional institution, jail or house of correction, which is under his supervision or control, notify such prisoner in writing thereof, stating its contents, including the court in which it is pending, and that such prisoner has the right to apply, as hereinafter provided, to such court for prompt trial or other disposition thereof.

"Such application shall be in writing and given or sent by such prisoner to the commissioner of correction, or such sheriff, master, keeper or penal institutions commissioner, who shall promptly forward it to such court by certified mail . . ..

"Any such prisoner shall, within six months after such application is received by the court, be brought into court for trial or other disposition of any such indictment, information or complaint, unless the court shall otherwise order."

kidnapping indictment. It has been held repeatedly that § 72A does not compel the dismissal of an indictment if the case is not tried or otherwise disposed of within six months after an application for speedy trial is received by the court. *Commonwealth* v. *Loftis,* 361 Mass. 545, 549 (1972). *Commonwealth* v. *Fields,* 371 Mass. 274, 280-281 (1976). *Commonwealth* v. *Alexander,* 371 Mass. 726 (1977). *Commonwealth* v. *Ambers,* 4 Mass. App. Ct. 647, 651 (1976). The statute confers upon the judge the discretionary power to extend the six-month period for good cause. *Id.* Here Campbell's trial began on April 6, 1976, six months and eighteen days after September 19, 1975, when she filed her application under § 72A.[5] Between the time of her application and the trial a series of continuances was granted. We need not examine each of them individually, as we did in *Ambers, supra,* however. Here the transcript shows that on September 25, 1975, six days following her § 72A application, her attorney, who had just been appointed to replace prior counsel, agreed to a continuance until October 20, 1975, to enable him to prepare for trial. Having agreed to the delay, Campbell waived her right to challenge that delay on appeal. *Commonwealth* v. *Carr,* 3 Mass. App. Ct. 654, 656-657 (1975). *Commonwealth* v. *Ambers,* 4 Mass. App. Ct. at 652. When that twenty-five day delay is discounted, the record shows that Campbell did go to trial within six months of her § 72A application. See *Commonwealth* v. *Carrillo, post,* 812 (1977) (involving a similar statute on interstate detainers). Thus we conclude that Campbell's rights under § 72A were not abridged.[6]

---

[5] Arguably, the date of the first hearing on the defendants' motions to dismiss (March 26, 1976) might be taken for purposes of a speedy trial analysis as the date on which the trial commenced. We do not decide the issue here but rather adopt the date most favorable to Campbell (and Kelley), namely the date of actual proceedings before a jury. See *Commonwealth* v. *Gove,* 366 Mass. 351, 361, n.12 (1974).

[6] Judges are urged to heed the oft-stated advice that when granting continuances under this statute they should specifically order an extension of the statutory period and delineate the reasons therefor. See *Commonwealth* v. *Loftis,* 361 Mass. 545, 549 (1972); *Commonwealth* v.

Kelley also faces a statutory obstacle at the threshold in that she never filed an application for speedy trial pursuant to § 72A. However, there being no evidence in the record that she was informed of her § 72A rights in prison, we treat Kelley's motion for a speedy trial, filed on April 22, 1975, as an application under § 72A. *Commonwealth* v. *Boyd,* 367 Mass. at 177. Kelley did not go to trial until April 6, 1976, nearly a year later.[7] However, as pointed out earlier, whether the indictment against Kelley must be dismissed may depend on whether the judge granted continuances for good cause beyond the six-month statutory period. *Commonwealth* v. *Ambers,* 4 Mass. App. Ct. at 651. As there were over a dozen continuances of varying lengths granted in Kelley's case, we examine them individually to see whether they were justified under the statute. *Id.* at 651-653.

1. The first court action subsequent to Kelley's motion for a speedy trial occurred on May 1, 1975. The stenographic record indicates that on that day an attorney from the Massachusetts Defenders Committee appeared before the court to inform the judge that the attorney assigned to the case agreed to continue it until May 9. When on May 9 Kelley's counsel did not appear, the judge continued the case until June 23, 1975, at the assistant district attorney's request. Her counsel having agreed to the first continuance and not having objected to the second, Kelley cannot now complain of those delays. *Commonwealth* v. *Carr,* 3 Mass. App. Ct. at 656-657. *Commonwealth* v. *Ambers,* 4 Mass. App. Ct. at 652.

2. On June 23, 1975, the judge set trial for September 18, 1975. Kelley's counsel objected and took an exception to the granting of the continuance. Although the record of that day's proceedings does not indicate the reason for the

---

*Boyd,* 367 Mass. 169, 179 (1975); *Commonwealth* v. *Fields,* 371 Mass. 274, 280, n.8 (1976); *Commonwealth* v. *Alexander,* 371 Mass. 726, 731 (1977); *Commonwealth* v. *Ambers,* 4 Mass. App. Ct. 647, 653-654 (1976).

[7] See note 5, *supra.*

three-month wait, at two subsequent hearings the assistant district attorney pointed out that June 23 was at the end of the court session and that September 18 was the next earliest possible trial date. Since there was no evidence of "oppressive or purposefully dilatory conduct" by the prosecution, the summer continuance should not be counted in the running of the statute. *Commonwealth* v. *Ambers,* 4 Mass. App. Ct. at 652, citing *Commonwealth* v. *Rego,* 360 Mass. 385, 392 (1971).

3. On September 18, 1975, Kelley was present for trial but Campbell had not been brought in from M.C.I. Framingham because she was ill. Although the record does not indicate that the judge specifically ordered a continuance, the absence of Kelley's codefendant warranted the delay. The American Bar Association has recommended with respect to the constitutional right to a speedy trial that a judge be given discretion to grant a continuance where the need to try a defendant with an absent codefendant is sufficiently great to justify a modest extension of the time limits applicable to the defendant. ABA Standards Relating to the Administration of Criminal Justice, Speedy Trial § 2.3 (g) and commentary (Approved Draft 1968).[8]

4. On September 25, 1975, Kelley's counsel agreed to an October 20 trial date so Kelley may not challenge that delay here. *Commonwealth* v. *Carr,* 3 Mass. App. Ct. at 656-657. *Commonwealth* v. *Ambers,* 4 Mass. App. Ct. at 652.

5. On October 20, 1975, the Commonwealth failed to have Kelley brought into court pursuant to a writ of habeas corpus. Kelley's counsel and the assistant district attorney discussed the possibility that the case might be dismissed, after which the case was continued without objection until October 27. Kelley may thus not challenge that week-long delay. *Id.*

6. The transcript indicates that on October 27 the judge

---

[8] The Supreme Judicial Court has endorsed the ABA standards for "possible guidance as to what might justify delay" in a § 72A case. *Commonwealth* v. *Boyd,* 367 Mass. at 177-180, & n.2. See *Commonwealth* v. *Ambers,* 4 Mass. App. Ct. at 652, n.4.

became ill and left the bench without specifically ordering a continuance. On November 17, 1975, Kelley filed a motion to dismiss the indictment and argued that the Commonwealth did not intend to prosecute because Calvin refused to testify. The assistant district attorney asked for a week to clear up the matter and the judge granted a continuance until November 24, 1975. Kelley's counsel objected and took an exception, but the judge pointed out that there were no sessions available for an earlier date. Then, on November 24, a further two-day continuance was granted because the assistant district attorney was ill. This accumulated delay of nearly a month is "not attributable to the prosecution because there was no evidence of 'oppressive or purposefully dilatory conduct by the prosecution . . . [and] [i]t is a fair inference that these delays were inherent in the general problems of the administration of justice in a congested county.' " *Ambers, supra,* at 652, quoting from *Commonwealth* v. *Rego,* 360 Mass. at 392.

7. On November 26, 1975, the assistant district attorney reported that for an unexplained reason police witnesses had not been summoned to court. He requested a trial date and represented that both police and civilian witnesses would be available. The judge set January 7, 1976, for trial. Kelley's attorney objected and took an exception to the continuance. In light of the Commonwealth's negligence in failing to have its witnesses present, coupled with the absence of any indication in the record as to why a trial date earlier than January 7, 1976, could not have been ordered, this delay is properly chargeable to the Commonwealth.

8. On January 7, 1976, the case was sent to the second session for trial but was not reached in either January or February because of the overburdened court calendar. At the end of February the case was returned to the first session. On March 23, the judge in the first session told the parties that he would be available to begin the case on the following day. When the assistant district attorney handling the case notified the judge that she had a prior commitment in another county conflicting with the proposed trial date, the judge succeeded in having the district at-

torney's office reassign the case to a prosecutor who would be available for trial in that week. It is apparent that this delay was attributable, not to the prosecution, but to "the general problems of the administration of justice in a congested county." *Commonwealth* v. *Ambers,* 4 Mass. App. Ct. at 652.

9. When the parties appeared before the judge on March 26, both Campbell and Kelley asked that their motions to dismiss for failure to grant a speedy trial be heard. During the court's hearing on the motions it became obvious that because of disagreement among the attorneys as to what had transpired at a number of the above described court proceedings, it would be necessary for the court to receive affidavits from the attorneys and transcripts of the court clerk's notes of those proceedings before ruling on the motions. The judge made the appropriate orders and continued the case until April 6. Kelley's counsel agreed to file an affidavit but objected and took exception to the continuance. This delay was clearly not due to oppressive or purposefully dilatory conduct on the part of the prosecution and is not chargeable to the Commonwealth. *Id.*

On April 6, 1976, the judge denied the defendant's motion to dismiss and commenced the trial. From what we have already said, it is apparent that at most only the delay between November 26, 1975, and January 7, 1976, can be laid at the door of the prosecution. As the remaining continuances granted were within the sound discretion of the court, dismissal of the indictments against Kelley is not required under § 72A. *Commonwealth* v. *Fields,* 371 Mass. 274, 280 (1976). *Commonwealth* v. *Ambers,* 4 Mass. App. Ct. at 651.

As in *Ambers,* the Commonwealth's response to and compliance with Campbell's and Kelley's requests for a speedy trial differ significantly from the Commonwealth's neglectful postures in *Commonwealth* v. *Gove,* 1 Mass. App. Ct. 614 (1973); *S.C.* 366 Mass. 351 (1974), and *Commonwealth* v. *Alexander,* 4 Mass. App. Ct. 212 (1976), *S.C.* 371 Mass. 726 (1977), where no court proceedings occurred at all for fifteen and eleven months, respectively, after the

defendants' § 72A rights had attached. See *Ambers, supra,* at 654.

### CONSTITUTIONAL SPEEDY TRIAL CLAIM.

The defendants also assert that they were denied their constitutional right to a speedy trial. That right is guaranteed by both the Sixth Amendment to the United States Constitution as made applicable to the States by the Fourteenth Amendment (*Klopfer* v. *North Carolina,* 386 U. S. 213, 222-223 [1967]) and the "analogous mandate" of art. 11 of the Massachusetts Declaration of Rights. *Commonwealth* v. *Green,* 353 Mass. 687, 690 (1968). *Commonwealth* v. *Gove,* 366 Mass. 351, 356, n.6 (1974).

Four basic factors must be considered in determining whether a defendant's right to a speedy trial has been infringed — "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker* v. *Wingo,* 407 U. S. 514, 530 (1972). See *Commonwealth* v. *Horne,* 362 Mass. 738, 741-742 (1973). These factors are to be employed in a "difficult and sensitive balancing process," with each factor being accorded equal weight. *Commonwealth* v. *Gove, supra,* at 361, quoting from *Barker, supra,* at 533, and *Horne, supra.* The burden is on the defendants to demonstrate prejudicial delay sufficient to warrant dismissal of the indictments against them. *Commonwealth* v. *Jones,* 360 Mass. 498, 502 (1971). *Commonwealth* v. *Gilbert,* 366 Mass. 18, 22 (1974). *Gove, supra.* We proceed to examine each of the factors to see whether Campbell and Kelley have met their respective burdens.

1. *Length of delay.*

The right to a speedy trial is engaged by "either a formal indictment or information or else the actual restraints imposed by arrest . . . .. Invocation of the speedy trial provision thus need not await indictment, information, or other formal charge." *Commonwealth* v. *Blaney, ante,* 96, 97 (1977), quoting from *United States* v. *Marion,* 404 U. S. 307, 320-321 (1971). *Dillingham* v. *United States,* 423 U. S.

64, 65 (1975). Campbell was arrested on May 27, 1974, on the kidnapping charge which is the subject of this appeal and was indicted on February 10, 1975. Consequently, her right to a speedy trial attached on May 27, 1974. *Blaney, supra,* at 97. We treat Kelley's right to a speedy trial as attaching on February 10, 1975, the date of her indictment.[9] See *Commonwealth* v. *Gove,* 366 Mass. at 357.

In the case of Campbell the delay between arrest and trial[10] was nearly twenty-three months, while the delay between Kelley's indictment and trial was fourteen months. Both delays are sufficient to "trigger" an inquiry on our part based upon the remaining *Barker* v. *Wingo* factors. See *Commonwealth* v. *Gove,* 366 Mass. at 362, n.13; *Commonwealth* v. *Burhoe,* 3 Mass. App. Ct. 590, 592 (1975). Contrast *Commonwealth* v. *Kennedy,* 2 Mass. App. Ct. 813 (1974).

2. *Reasons for the Delay.*

We have already discussed the reasons for the delays in bringing Kelley to trial after her indictment. Most of the same reasons apply to Campbell as well in the period following her indictment. The defendants acceded to a number of the continuances and cannot now point to those delays as prejudicial. As we pointed out earlier, Campbell's speedy trial right attached at the time of her arrest. Therefore, we must also examine the reasons for the delay of almost nine months in returning an indictment against her. The Commonwealth has advanced no reason in its brief for that delay,[11] but at the April 6, 1976, hearing on Campbell's

---

[9] The record does not indicate when, if at all, Kelley was arrested on the charges leading to her conviction and these appeals. She was apparently indicted while serving a sentence on another conviction. Since she argues that her right to a speedy trial attached on the date of indictment, we adopt that date as the measuring point of her right to a speedy trial.

[10] See note 5, *supra.*

[11] The Commonwealth's brief appears to assume, contrary to what we have just reiterated, that Campbell's right attached only at the time of her indictment, which probably accounts for the Commonwealth's failure to explain the pre-indictment delay.

motion to dismiss, her attorney referred to the fact that she had also been indicted for at least two other crimes involving other codefendants. These occurred within a few months of the kidnapping incident here. It is reasonable to assume that the plethora of charges against Campbell and her fellow participants contributed to the delay in bringing formal indictments. Compare *United States* v. *Lovasco,* 431 U. S. 783, 790 (1977). While such a delay was perhaps due in part to administrative neglect, it weighs less heavily against the Commonwealth than would a finding of an intentional attempt to hamper the defendant. *Commonwealth* v. *Burhoe,* 3 Mass. App. Ct. at 594. *Commonwealth* v. *Blaney, supra,* at 99. Viewing the circumstances in totality, "We conclude that the reasons for the delay provide only limited support for the defendant's constitutional claim." *Id.*

3. *The Defendants' Assertions of their Rights.*

Both Campbell and Kelley took more than one step to secure a speedy trial. Campbell filed a pro se application for a speedy trial under § 72A in September, 1975 (seven months after her indictment), and a motion to dismiss for failure to grant her a speedy trial on December 3, 1975 (four months before trial).[12] Kelley filed a motion for a speedy trial in April, 1975 (two months after indictment) and filed a motion to dismiss for failure to grant a speedy trial in November, 1975 (five months before trial). Both defendants renewed their motions for a speedy trial on March 26, 1976, when the judge held a hearing and denied the motions. These repeated actions by the defendants evidenced their concern for the delays in bringing them to trial. See *Commonwealth* v. *Blaney, supra,* at 98.

4. *Prejudice to the Defendants.*

Absent a showing of culpability on the part of the Commonwealth in delaying trial, it is the defendants' burden

---

[12] We consider the motion to dismiss as "the functional equivalent of a specific demand for speedy trial." *Commonwealth* v. *Gove,* 366 Mass. at 363. *Commonwealth* v. *Dabrieo,* 370 Mass. 728, 737 (1976).

to demonstrate that the prosecution unreasonably caused prejudicial delay. *Commonwealth* v. *Gilbert,* 366 Mass. at 22. *Commonwealth* v. *Jackson,* 3 Mass. App. Ct. 511, 517 (1975). See *Commonwealth* v. *Blaney, supra,* at 99.

Both Campbell and Kelley argue that the delay was prejudicial to them because in the interim between indictment and trial Simpson, who apparently rode with them while they drove Williams to look for Kelley's sister (and who, as stated, was later apprehended removing a television from Williams's apartment), disappeared and could not be called to testify in their behalf.

At the hearing on the defendants' motions to dismiss, counsel for Campbell stated that he had written to Simpson at her last known address and had received a letter back marked "Addressee Unknown." Counsel further stated that Campbell had made several unsuccessful attempts to locate Simpson. Neither of the defendants' attorneys supported their allegations of Simpson's absence with affidavits; nor did they introduce evidence at the hearing with respect to attempts to locate her. See *Commonwealth* v. *Underwood,* 3 Mass. App. Ct. 522, 530-531 (1975). See also *Commonwealth* v. *Dabrieo,* 370 Mass. 728, 738 (1976).

Even if we were to assume that the defendants made all reasonable efforts to find Simpson, they have not suggested how Simpson's testimony might have aided their cause. Simpson might have been able to testify as to what occurred in the car, but she was not present in Calvin's apartment at the point when force was allegedly exerted and the kidnapping occurred. See *Commonwealth* v. *Eagan,* 357 Mass. 585, 590 (1970). To prevail on the issue of prejudice the defendants must demonstrate more than that a missing witness would have corroborated their professed innocence. *Dabrieo, supra,* at 738, citing *United States* v. *Brown,* 495 F. 2d 593, 600 (1st Cir.), cert. den. 419 U. S. 965 (1974).

Kelley contends that the delay in bringing her to trial was prejudicial because the pendency of the charges prevented her from being granted parole from a sentence she was then serving. Delay in trial of untried indictments may deprive an inmate of opportunities for parole, and courts

have considered this a serious form of prejudice in assessing speedy trial claims. *Commonwealth* v. *Gove*, 366 Mass. at 365. *Commonwealth* v. *Blaney*, *supra*, at 100. See *Moore* v. *Arizona*, 414 U. S. 25, 27 (1973). In this case, however, Kelley's claim, unsupported by evidence or affidavit in the record, must be treated as speculative. See *Commonwealth* v. *Parry*, 1 Mass. App. Ct. 730, 734, n.3 (1974); *Blaney*, *supra.* Campbell also argues that she was prejudiced by the delay because her conviction on another case in the interim deterred her from taking the stand in her own defense for fear that her conviction in that case would be used to impeach her credibility in this case. The argument has no merit.

In weighing the speedy trial essentials, we conclude that the judge did not err in denying the defendants' motions to dismiss the indictments. Unwarranted preindictment or pretrial delays are of course not to be countenanced; but in the absence of a clear demonstration here of actual prejudice to Campbell or Kelley, we do not conclude that the impediments to their right to a speedy trial have been so egregious as to warrant recourse to dismissal. See *United States* v. *Cabral*, 475 F. 2d 715 ,720 (1st Cir. 1973).

### GRAND JURY ARGUMENT.

Campbell argues that under *Taylor* v. *Louisiana*, 419 U. S. 522 (1975),[13] her indictment must be dismissed because women were systematically underrepresented on the Suffolk County grand jury which indicted her. The Supreme Judicial Court has stated in numerous cases that *Taylor*, *supra*, assuming arguendo that it applies to grand juries as well as to petit juries and to the approximate two-to-one male-female ratio formerly existing on Suffolk County grand juries, will not be applied retroactively to indictments issued by grand juries empanelled prior to

---

[13] *Taylor*, in reversing a conviction, held that where women had been almost totally excluded from trial jury panels, the Sixth Amendment's requirement that a defendant be tried by a fair cross section of the community was not satisfied.

January 21, 1975, the date of the *Taylor* decision. *Brunson*
v. *Commonwealth,* 369 Mass. 106, 117 (1975). *Common-
wealth* v. *Daggett,* 369 Mass. 790, 794-795 (1976). See
*Commonwealth* v. *Mobley,* 369 Mass. 892, 897-898 (1976);
*Commonwealth* v. *Moran,* 370 Mass. 10, 12 (1976); *Com-
monwealth* v. *Core,* 370 Mass. 369, 370 (1976); *Common-
wealth* v. *Hunt,* 370 Mass. 861 (1976); *Commonwealth* v.
*Pleas,* 370 Mass. 863 (1976); *Daniel* v. *Louisiana,* 420 U. S.
31 (1975).

The record indicates that Campbell was indicted on
February 10, 1975, but there is no reference on the record
before us to the date on which the grand jury which in-
dicted her was convened. Inasmuch as Campbell's brief
omits reference to the date of the convening and the brief's
approach to the grand jury issue is that *Brunson, Daggett*
and similar cases were wrongly decided, we must assume
that the grand jury was convened prior to the decision in
*Taylor.*[14] Consequently, under *Brunson, supra,* and its
progeny, Campbell's grand jury argument fails. .

## BIAS OF THE JUDGE.

Campbell asserts as error the judge's refusal to disqual-
ify himself for alleged prejudice against her. Her bias argu-
ment rests on the allegation that in a previous criminal trial
involving Campbell, the same judge asked a police officer,
ex parte, what sort of people the codefendants were and
the officer replied, "They are animals and they will do any-
thing." In the earlier case and in the instant case, the judge
refused to disqualify himself because of the incident.

Federal due process and arts. 11 and 29 of the Massachu-
setts Declaration of Rights, of course, require that judges
be "as free, impartial and independent as the lot of hu-
manity will admit." *Ward* v. *Monroeville,* 409 U. S. 57
(1972). *Commonwealth* v. *Leventhal,* 364 Mass. 718, 721

---

[14] It seems unlikely that Campbell omitted the date of the conven-
ing by inadvertence since she had had experience in litigating the
identical issue on another indictment in another court. See *Campbell*
v. *Bates,* 416 F. Supp. 1111 (D. Mass. 1976).

(1974). See Note, Disqualification of Judges for Bias in the Federal Courts, 79 Harv. L. Rev. 1435 (1966); Note, Disqualification of Judges and Justices in the Federal Courts, 86 Harv. L. Rev. 736, 746 (1973). See also Rule 3:25 of the Supreme Judicial Court, 359 Mass. 841 (1972). But this does not mean that a judge must recuse himself from a criminal case merely because he has heard unfavorable remarks about the defendant in the course of prior litigation; and there is generally no ground for disqualification simply because a judge presided in a previous criminal trial involving the same defendant. Ratner, Disqualification of Judges for Prior Judicial Actions, 3 How. L.J. 228, 245 (1957). See *Commonwealth* v. *Williams,* 364 Mass. 145, 149 (1973) (where a judge who ruled on a lengthy pretrial motion was permitted to preside at trial); *Commonwealth* v. *Roukous,* 2 Mass. App. Ct. 378, 387 (1974) (where a judge who had presided at the trial of others indicted with the defendant was allowed to preside at the defendant's trial); *Lena* v. *Commonwealth,* 369 Mass. 571, 573-576 (1976) (where a judge who chastised the jury for returning a not guilty verdict against a defendant in a rape case was permitted to serve on an appellate review panel which increased the defendant's sentence on conviction in another rape case). Nor does knowledge of damaging information against a defendant disqualify a judge from continuing to sit on a case. Alleged bias and prejudice calling for disqualification must ordinarily arise from an extrajudicial source and not from something learned in the course of the judge's official duties. See *Kennedy* v. *District Court of Dukes County,* 356 Mass. 367, 379 (1969), citing *United States* v. *Grinnell Corp.* 384 U. S. 563, 583 (1966); *Lena, supra,* at 574-575. See also *Commonwealth* v. *Valliere,* 366 Mass. 479, 483 (1974) (where a judge who read the transcript of an inquest into victims' deaths was permitted to preside over a murder trial).

Here the judge's decisions to continue to preside at both the earlier trial involving Campbell and at this trial constituted an unequivocal assertion that in his own mind there was no danger of prejudice. *King* v. *Grace,* 293 Mass. 244,

247 (1936). We see no abuse of discretion in the judge's refusal to disqualify himself. Furthermore, our study of the transcript reveals no indication of bias in those rulings of the judge which Campbell assigns as error and as evidence of the judge's prejudice against her. See generally *King* v. *Grace,* 293 Mass. at 247. *Commonwealth* v. *Roukous,* 2 Mass. App. Ct. at 387. *Commonwealth* v. *Alexander,* 2 Mass. App. Ct. 911 (1975).

1. It was not error for the judge to permit Nancy and a police officer to testify that as they approached the Williamses' apartment in a police cruiser after the kidnapping, they saw Simpson carrying a television out of the Williamses' house toward Campbell's parked car. The television episode occurred within minutes of the end of the kidnapping (compare *Commonwealth* v. *Eagan,* 357 Mass. 585, 589-590 [1970]), and the jury could not only have considered Simpson's removal of the television as a motive for the earlier removal of Calvin from the apartment but also as further evidence of the Campbell-Kelley joint enterprise since Simpson was arrested as she was carrying the television toward the open door of the car in which both Kelley and Campbell were seated.

Evidence relevant to a criminal charge is not rendered inadmissible merely because it indicates that the defendant may have committed another crime. *Commonwealth* v. *White,* 353 Mass. 409, 420 (1967), cert. den. 391 U. S. 968 (1968). *Commonwealth* v. *Redmond,* 357 Mass. 333, 338 (1970). *Eagan, supra. Commonwealth* v. *Caine,* 366 Mass. 366, 370-371 (1974). The Commonwealth may introduce evidence which, while not itself evidence of the offense charged, tends to prove the circumstances under which the crime was committed and serves as an aid to the jury in reaching a verdict by giving them a total picture. *Commonwealth* v. *Durkin,* 257 Mass. 426, 427-428 (1926). See *Commonwealth* v. *Hopkins,* 1 Mass. App. Ct. 858 (1973); *Commonwealth* v. *Harding,* 1 Mass. App. Ct. 858 (1973); *Commonwealth* v. *Jones,* 2 Mass. App. Ct. 902 (1974).

2. A second contention is that it was error for the judge

to refuse to permit Campbell's counsel to cross-examine Calvin at length about the nature of the relationship between Nancy and Simpson. Without deciding whether Campbell properly saved an exception to the judge's refusal to permit the testimony, we nonetheless examine that refusal for the possible light it might shed on Campbell's suggestion that the judge was biased against her and therefore should have disqualified himself. "A basic rule states that reasonable cross-examination for the purpose of showing bias and prejudice of the witness is a matter of right." *Commonwealth* v. *Ahearn,* 370 Mass. 283, 287 (1976). In certain situations restrictions on cross-examination intended to show bias or prejudice of a witness have been held to be violations of a defendant's Sixth Amendment rights. *Davis* v. *Alaska,* 415 U. S. 308, 320 (1974). *Commonwealth* v. *Ferrara,* 368 Mass. 182, 186, 189 (1975). *United States* v. *Garrett,* 542 F. 2d 23 (6th Cir. 1976). Compare *Ahearn, supra.*

Here the judge limited questions which Campbell now claims were put for the purpose of showing that during the Williamses' separation Nancy had been living in a homosexual relationship with Simpson. Campbell suggests that Calvin's embarrassment or anger because of that relationship may have moved him to manufacture his kidnapping testimony against Simpson's friends Campbell and Kelley. Since Simpson was not charged with the kidnapping, it hardly follows that whatever hostility Calvin may have borne toward Simpson would have motivated him to testify falsely against Campbell and Kelley. We doubt that either the Supreme Court in *Davis* or the Supreme Judicial Court in such cases as *Ferrara* and *Ahearn* intended "to sanction speculative expeditions into areas only tangentially related to the facts in issue in the hope that some basis for implying an ulterior motive might be found." See *United States* v. *Ong,* 541 F. 2d 331, 342 (2d Cir. 1976), cert. den. 429 U. S. 1075 (1977). We cannot say that the judge abused his broad discretion to make proper rulings on the scope of cross-examination in this situation. See *Commonwealth* v. *Pettijohn,* 373 Mass. 26, 30 (1977).

3. The paraphrased restatement of a portion of Calvin's testimony[15] by the judge was not prejudicial error. While the judge's characterization of Calvin's testimony as being "clear and unequivocal" may not have been completely accurate in describing the confrontative conversation which led to Calvin's leaving his apartment with Kelley and Campbell to look for Kelley's sister, the judge fairly summed up Calvin's testimony about that conversation. Cf. *Greenberg* v. *Weisman*, 345 Mass. 700, 704 (1963). Calvin's testimony at trial certainly indicated that his decision to leave with the two women was motivated by the fear that Kelley might use her gun if he refused.[16]

4. The judge did err in refusing to permit Calvin to answer a question as to whether Campbell had "force[d] [him] to do anything against [his] will." The Commonwealth argues that the question was improper because it called for an opinion as to the ultimate issue before the jury. We disagree. The cases cited by the Commonwealth are inapposite, and in fact two of them support the proposition that, while it would have been improper for defense counsel to have asked Calvin whether he had been kidnapped, it was permissible to ask whether he had been compelled by Campbell to do anything against his will. See *Commonwealth* v. *Jones*, 319 Mass. 228, 230-231 (1946).

However, we consider the error to have been harmless. Counsel for Campbell was permitted to ask Calvin a num-

---

[15] The judge, in foreclosing further repetitive cross-examination about the exchange between Kelley and Calvin in the latter's apartment, stated to defense counsel, "Look, you've gone all over that. His testimony is clear and unequivocal. First this lady said, 'You're going to go,' and then he said, 'All right. I'll go.'"

[16] The relevant testimony was as follows:

| | |
|---|---|
| DEFENDANT'S COUNSEL: | "Didn't you tell Miss Kelley that you were prepared to show her you weren't the one?" |
| WITNESS: | "How am I prepared to show anyone when they've got a gun on you and — I had to prove it." |
| DEFENDANT'S COUNSEL: | "Didn't you say to her that you would go — ?" |
| WITNESS: | "Naturally — hold it. I said that because for the safety of my wife and kid, yes." |

ber of other questions the answers to which indicated that Calvin had not been actively coerced by Campbell, viz., that during the fight with Kelley Calvin was not afraid of Campbell, that during the entire incident Campbell never assaulted him or laid a hand on him, that Campbell had not threatened him in any way, and that Campbell had not said anything about going to see Kelley's sister. See *Commonwealth* v. *Anderson,* 3 Mass. App. Ct. 463, 466-467 (1975), cert. den. 424 U. S. 926 (1976). Furthermore, the judge's charge to the jury made clear that there had been no evidence that Campbell had threatened Calvin or forced him to leave and that a guilty verdict would have to rest on the theory of joint enterprise between Kelley and Campbell. Given the judge's charge, it is doubtful whether an answer by Calvin to the excluded question would have aided in establishing Campbell's innocence. Nor can we say that this misstep by the judge indicates that he was biased against Campbell.

5. There was no error in the charge to the jury. The test on appeal is the impression created by the charge in its entirety. *Commonwealth* v. *Pinnick,* 354 Mass. 13, 15 (1968). *Commonwealth* v. *Perry,* 3 Mass. App. Ct. 308, 311-312 (1975). *Commonwealth* v. *Cooper,* 4 Mass. App. Ct. 782, 783 (1976). Our review of the charge convinces us that the judge set forth adequate guidelines for the jury and did not invade their fact-finding province to the prejudice of the defendant. *Perry, supra. Cooper, supra.* Contrast *Commonwealth* v. *Borges,* 2 Mass. App. Ct. 869, 870 (1974). *United States* v. *Womack,* 454 F. 2d 1337, 1341-1342 (5th Cir. 1972).

## MOTION FOR A DIRECTED VERDICT

We turn finally to Campbell's motion for a directed verdict. We consider the evidence in its light most favorable to the Commonwealth (*Commonwealth* v. *Flynn,* 362 Mass. 455, 479 [1972]; *Commonwealth* v. *Burns,* 362 Mass. 875 [1972]) to decide whether there was sufficient evidence of the defendant's guilt to warrant the submission of the case to the jury. *Commonwealth* v. *Baron,* 356 Mass. 362,

365 (1969). *Commonwealth* v. *Mangula,* 2 Mass. App. Ct. 785, 786 (1975). *Commonwealth* v. *Gallagher,* 4 Mass. App. Ct. 661, 662 (1976). It is our conclusion that Campbell's motion for a directed verdict was properly denied.

Mere presence at the commission of a crime and even failure to take affirmative steps to prevent it do not render a person liable as a participant. *Commonwealth* v. *Benders,* 361 Mass. 704, 708 (1972). *Commonwealth* v. *Clark,* 363 Mass. 467, 473 (1973). "To be convicted as a principal the defendant must have participated to some extent in the commission of the offense." *Commonwealth* v. *Michel,* 367 Mass. 454, 457 (1975), and cases cited. We believe that the Commonwealth introduced sufficient evidence to warrant the inference that Campbell participated with Kelley in the kidnapping of Calvin. See *Mangula, supra.* Campbell appeared at the Williamses' door at the unlikely hour of 12:30 A.M. and asked to use the bathroom only moments before Kelley arrived at the apartment armed with a gun and a knife. Campbell emerged from the bathroom during the scuffle between Kelley and Calvin, and when Calvin wrested the gun from Kelley and handed it to Campbell, Campbell immediately passed it back to Kelley. Having witnessed at least part of Calvin's struggle against his armed assailant, Campbell's argument that she did not know that Calvin would not look for Kelley's sister voluntarily has a hollow ring. That Campbell took the driver's seat and drove the car to their destination without directions from Kelley is some evidence that they had come to the Williamses' apartment together with a plan. Furthermore, there was evidence that, when the police arrived at the apartment, Campbell had returned to the scene with Kelley and Simpson and was seated in the car with Kelley while Simpson was removing the Williamses' television from the apartment. Cumulatively, this evidence warranted submission of Campbell's case to the jury.

*Judgments affirmed.*