COMMONWEALTH *vs.* JOSEPH ALVES, III, & others.[1]

Plymouth.　May 9, 1978. — September 12, 1978.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Constitutional Law*, Speedy trial. *Practice, Criminal*, Speedy trial, Assistance of counsel. *Identification. Evidence*, Hearsay, Police report.

A delay of three years between the indictment and trial of two defendants did not constitute a denial of the defendants' right to a speedy trial where findings were warranted that the defendants were responsible for a major portion of the delay, that they had failed to assert their right to a speedy trial during the delay, and that they had not been prejudiced by the delay. [576–580]

Defendants in a criminal case failed to show either that a conflict of interest existed or that their rights to effective assistance of counsel were violated by the fact that the same public defender was permitted to represent all three of the defendants prior to and during their trial. [580–581]

A confrontation between the victim of a crime and the occupants of an automobile stopped by police at a roadblock was not so unnecessarily suggestive as to create a substantial likelihood of mistaken

---

[1] Benjamin J. Baptista and Leonard J. Dias

identification where the victim had had an ample opportunity to observe the perpetrators of a robbery, the confrontation occurred in the course of a continuing police investigation within an hour and a quarter following the robbery, the victim identified the occupants immediately upon observing them without any prompting by the police, and the victim's descriptions of the robbers, which had been given to the police within a very short time of the robbery, were consistent with the appearances of the occupants when apprehended. [581–582]

At a criminal trial, the judge did not err in excluding from evidence a police officer's report which contained statements made by another police officer; such second-level hearsay was not admissible under either the business records or the official written statements exception to the hearsay rule. [582–583]

INDICTMENT found and returned in the Superior Court on September 19, 1973.

The case was tried before *Sgarzi, J.*

*Beth H. Saltzman* for Joseph Alves, III.

*Henry E. Quarles, Jr.,* for Benjamin J. Baptista & another.

*Thomas A. Hensley,* Assistant District Attorney, for the Commonwealth.

HALE, C.J. These are appeals by three defendants who have been convicted after a jury trial held pursuant to G. L. c. 278, §§ 33A–33G, on a single indictment charging them with armed robbery. In a brief submitted by Baptista and Dias they contend that the judge erred in refusing to dismiss the indictment against them on the ground that the Commonwealth failed to provide them with a speedy trial. Baptista and Dias also contend that they were deprived of their rights to the effective assistance of counsel because of a conflict of interest which arose between the defendants at a time when they were jointly represented by the same public defender. In a brief filed by Alves he contends that the judge erred in refusing to suppress the testimony of one of the victims identifying Alves as one of the robbers because of a suggestive confrontation which occurred between the victim and the defendants soon after the robbery. Alves also assigns er-

ror in the judge's exclusion of certain evidence offered by him at trial. After first recounting certain of the material facts which could have been found by the judge from the evidence submitted at the hearing on the motions to dismiss and to suppress, we shall discuss the defendants' contentions separately.

On the night of May 22, 1973, Mr. and Mrs. Horton, an elderly couple, were watching television in the living room of their home, located on Route 28 in Middleboro. None of the lights was on in the Hortons' home. However, the living room was amply illuminated both by light which emanated from the television set and by light which shone through a picture window from a mercury vapor streetlight located across the street from the house.

At about 9:45 P.M. three men entered the Hortons' home. One of the men, armed with a nickel-plated handgun, forced the Hortons to remain seated in the living room while the other two men took about $300 from several envelopes which they found in a metal cash box in one of the bedrooms. The men then tore the Hortons' two telephones from their connections and left the house. The robbery lasted approximately five to seven minutes.

After the men had left, Mr. Horton went to a gas station next to his house and telephoned the Middleboro police. While enroute to the gas station he saw the three men running down Route 28. The Middleboro police received Mr. Horton's report of the robbery at about 9:55 P.M. Upon receiving the report some officers went directly to an intersection on Route 28 located about four miles west of the Hortons' residence, set up a roadblock, and began stopping all westbound traffic. At the roadblock the officers received a radio report that the robbery had been committed by three black men, armed with a revolver, all three men being about 5' 8", and one man having a large afro hairstyle.

After having stopped several automobiles at the roadblock, the officers stopped a black Corvair in which the three defendants and two women were riding. The height

of the three defendants ranged from about five feet seven inches to about six feet. One of the defendants wore his hair in a large afro style. The officers ordered the occupants out of the Corvair. All were patted down, and the Corvair was searched. No gun or significant amount of cash was found. The occupants of the Corvair were detained while an officer transported Horton to the roadblock.

The officer and Horton arrived at the roadblock between 10:30 and 11:00 P.M. As the officer brought the police cruiser to a halt Horton immediately and without prompting pointed to the three defendants, who were standing together by a streetlight at the edge of the road about ten to fifteen feet from the cruiser, and identified them as the men who had robbed him. Horton then walked up to the defendants and identified Baptista as the man who had threatened him with a gun. He also identified Alves and Dias as the men who had searched his bedrooms. Horton stated that he recognized the red shirt worn by Dias, the yellow shirt worn by Alves, and the shirt with the dark and light stripes worn by Baptista. Prior to this confrontation with the defendants Horton had similarly described to the police the shirts which had been worn by the robbers.

The defendants were subsequently taken to the Middleboro police station and booked. Horton also went to the police station and observed while the defendants were processed and jailed. On the next day Mrs. Horton was shown thirty-five to forty photographs which included those of the three defendants. She was unable to identify any of the defendants. Horton subsequently identified the defendants in the District Court and in the Superior Court at trial.

An indictment charging the defendants with armed robbery was returned on September 19, 1973. The defendants were arraigned on October 9, 1973, and a public defender was appointed to defend all three men. They were tried together on the armed robbery charge in the Superior Court in October, 1976.

*The Baptista and Dias Assignments of Error.*

Baptista and Dias argue that the judge erred in failing to dismiss the indictment as to them, claiming that they were deprived of their rights to a speedy trial by the delay of over three years between their indictment and trial. After having weighed the prosecutor's and the defendants' conduct in this case in the manner set out by the Supreme Court of the United States in *Barker* v. *Wingo,* 407 U.S. 514 (1972),[2] we conclude that both these defendants have failed to establish that they were prejudiced by a delay in trial which was unreasonably caused by the Commonwealth. See *Commonwealth* v. *Gilbert,* 366 Mass. 18, 22 (1974); *Commonwealth* v. *Campbell,* 5 Mass. App. Ct. 571, 583–584 (1977). Accordingly, we hold that the judge did not err in denying the motion to dismiss the indictment.

In his decision denying the motion the judge found that "any delay in bringing the defendants to trial is not the fault of the Commonwealth but was brought about by the indifference and the tactics of the defendants." That finding was based upon the judge's subsidiary finding that "the Commonwealth throughout the six criminal sittings in 1974 and 1975 was ready for trial but the defendants in failing to make themselves available for trial when called brought about the delay of which they complain."[3] That finding was apparently based upon the judge's consideration of testimony which had been presented at the

---

[2] The test set out in *Barker* v. *Wingo* requires us to consider such factors as the length of delay, the reason for the delay, the defendants' assertion of their rights, and the prejudice to the defendants in making an ad hoc determination whether their rights to a speedy trial have been abridged. *Barker* v. *Wingo, supra* at 530.

[3] The defendants were not tried at either of the two criminal sittings held in Plymouth County in 1976 prior to the October sitting of that year because at the time of one sitting defense counsel was unavailable and at the time of the other a key Commonwealth witness was ill. These reasons for delay are reasonable; therefore, this period of delay does not weigh against the Commonwealth in our consideration of the defendants' speedy trial claims. *Barker* v. *Wingo, supra* at 531.

hearing on the defendants' motion by a police officer who had worked on the case against the defendants. That officer testified that during the period between the defendants' indictment and trial he had been present in the Superior Court on approximately eleven occasions when the defendants' case had been called on the trial list. He stated that on several of those occasions all the witnesses which the Commonwealth had intended to call in its case against the defendants had also been present in court. The officer testified to his recollection that the defendants' case had been put off the trial list on several of those occasions because one or more of the defendants, none of whom was in custody at the time, had been either absent or tardy. While we cannot say that this testimony supports the judge's finding that the defendants were solely responsible for the delay in trial, we consider that the judge was not incorrect in allocating a major portion of the responsibility for the delay to the defendants.[4]

The judge also found that during the period between their indictment and trial none of the defendants ever asserted his right to a speedy trial. This finding appears to be amply supported by the record. At no time between the indictment and trial did either Baptista or Dias file a motion for a speedy trial. Nor did either of them file a motion to dismiss the indictment for lack of a speedy trial at any time prior to October, 1976. While such omissions do not necessarily constitute a waiver of the right to a speedy trial, the defendants' failure to assert their rights makes the proof of a prejudicial deprivation of those

---

[4] It appears from the record that some of the delay in bringing the defendants to trial may have been caused by court congestion and administrative neglect. While the onus for delay for such reasons is on the Commonwealth, we shall not weigh those factors as heavily against the Commonwealth as we would a finding of intentional delaying tactics. *Commonwealth* v. *Blaney*, 5 Mass. App. Ct. 96, 99 (1977). This is particularly true when one considers the defendants' contribution to and apparent acquiescence in the delay. *Commonwealth* v. *Gove*, 366 Mass. 351, 362–363 (1974).

rights much more difficult. *Barker* v. *Wingo*, 407 U.S. at 532. *Commonwealth* v. *Gilbert*, 366 Mass. at 23.

The judge found lastly that the defendants were not materially prejudiced by the delay in this case. This finding was based largely upon the judge's conclusion that the delay in trial did not substantially undermine either defendant's ability to present his defense. Baptista and Dias contend that this finding was erroneous, as there was evidence before the judge from which he could have found that the delay in trial had caused these two defendants to lose important exculpatory evidence.

From the evidence presented at the hearing on the defendants' motion it appears that on the night of May 22, 1973, Officer DeMoranville, the then fingerprint expert for the Middleboro police department, went to the Hortons' home, where he "dusted" the telephones and cash box and attempted to take fingerprints from the envelopes which had been touched by one or more of the robbers. Officer DeMoranville died about thirteen months after the date of the robbery, and his desk in the police station was taken over by other officers. When, at the defendant's request, the desk and the fingerprint area in the police station were searched just prior to trial, no prints or other records relating to this case were found. Baptista and Dias claim that DeMoranville had successfully lifted some prints at the Hortons' home, and that subsequently he had attempted and failed to match those prints with prints which were taken from the defendants after their arrest. They contend that they were thus prevented from developing a defense based upon this potentially exculpatory evidence because of the delay in their trial.

These defendants relied on certain hearsay evidence in their attempt to establish that the police had originally possessed and subsequently lost fingerprints which had been taken from the scene of the robbery. This evidence consisted of testimony by Officer Lavallee of the Middleboro police department that Officer DeMoranville had

stated to him some time after the robbery that he had obtained fingerprints from the scene of the robbery and had been unable positively to identify those prints. A report which had been written by Officer Lavallee some time after the robbery was introduced at the hearing. A passage within that report stated: "ADDED INFORMA-TION: Sgt. DeMoranville dusted the two phones that were ripped out of the Horton home, and also the money cash box and had no luck on the prints. He also took prints off of three envelopes that the money had been in, but so far has not been able to come up with a positive I.D. on the prints."

We cannot say that the judge erred in discounting this hearsay evidence and in concluding that no fingerprints had been taken at the scene of the robbery. The police witness who had been with Officer DeMoranville when he had attempted to obtain prints at the scene of the robbery testified that he did not see him obtain any fingerprints at that time. All the officers who were questioned in this case stated that they had never seen any fingerprints which had supposedly been lifted by Officer DeMoran-ville. We observe, incidentally, that any fingerprints which might have been taken by Officer DeMoranville would not necessarily have been exculpatory of the de-fendants. If prints had been obtained, they might have proved too indefinite for positive identification, or they might have been left at the scene by the Hortons, by the investigating officers, or by some other person who prop-erly held the objects. See *Commonwealth* v. *Horne*, 362 Mass. 738, 746 (1973); *Commonwealth* v. *Boyd*, 367 Mass. 169, 180 (1975); *Commonwealth* v. *Dabrieo*, 370 Mass. 728, 738 (1976).

The judge's findings that the defendants were responsi-ble for some of the delay in this case, that the defendants had never asserted their rights during the delay, and that the defendants were not prejudiced by loss of exculpatory evidence during the delay were warranted by the evi-dence. Therefore, we concur with his conclusion that nei-

ther of these defendants suffered a prejudicial abridgement of his right to a speedy trial. See *Commonwealth* v. *Burhoe*, 3 Mass. App. Ct. 590, 591 (1975).

Baptista and Dias next contend that the judge erred in allowing the same public defender to represent all three of the defendants prior to and during their trial. They do not claim that their counsel was generally inadequate or ineffective. However, they claim that he did not adequately protect their interests when he failed to present motions for a speedy trial and for severance of the proceedings against the defendants on those occasions when their case was put off the trial list due to the absence or tardiness of a different defendant. They contend that their counsel refrained from presenting such motions on their behalf for fear that sanctions would thereby result against another client who was not then present in court. They conclude that the conflict of interest which arose between the absent and present defendants on these occasions prevented their counsel from effectively assisting in their defense by taking the steps necessary to protect them from a prejudicial delay in their trial.

Joint representation of criminal defendants by the same attorney does not, in itself, constitute a deprivation of a particular defendant's right to the effective assistance of counsel, absent a showing that counsel's ability to represent all the defendants was undermined by a substantial conflict of interest which existed between some of the defendants. *Commonwealth* v. *Bernier*, 359 Mass. 13, 23 (1971). *Commonwealth* v. *Adams*, 374 Mass. 722, 731 (1978). "[T]he burden lies with the [complaining] defendant to prove, without relying on speculation, that a conflict existed." *Commonwealth* v. *Bolduc*, 375 Mass. 530, 540–541 (1978). *Englehart* v. *Commonwealth*, 353 Mass. 561, 562, cert. denied, 393 U.S. 886 (1968). *Commonwealth* v. *Smith*, 362 Mass. 782, 784 (1973). Neither Baptista nor Dias has satisfied that burden in this case.

We cannot discern from the record which defendant or defendants were actually responsible for the delays in the

trial. We find no reason to reject the possibility that some
of the fault lay with each of the defendants. At no time
between the indictment and the trial did any of the de-
fendants go on record as objecting either to the delay in
their trial or to their joint representation by the same
counsel. On this record both defendants have failed to
show either that a conflict of interest existed or that their
rights to the effective assistance of counsel were violated.
Compare *Commonwealth* v. *Lafleur*, 1 Mass. App. Ct. 327,
331–332 (1973).

*The Alves Assignments of Error.*

Alves first assigns error in the judge's failure to ex-
clude from evidence Mr. Horton's identification of Alves
as one of the robbers. He claims that the judge should
have suppressed this identification testimony as it was
the product of the suggestive confrontation which oc-
curred between Mr. Horton and the defendants at the
police roadblock on the night of the robbery. We disa-
gree.[5]

Although one-on-one confrontations between eyewit-
nesses to a crime and persons in custody are generally
disfavored, showups such as occurred at the police road-
block on the night of the robbery in this case have rou-
tinely been held to be constitutionally permissible when
conducted in a fair manner promptly after the crime.
*Stovall* v. *Denno*, 388 U.S. 293, 302 (1967). *Commonwealth*
v. *Barnett*, 371 Mass. 87, 92–93 (1976), cert. denied, 429
U.S. 1049 (1977). The judge found that during the robbery
Mr. Horton had had an ample opportunity to observe the

---

[5] We consider only the constitutional propriety of the initial con-
frontation and identification which occurred at the police roadblock.
"[So long as] the Commonwealth establishes that the initial identifica-
tion [of the defendant] is the product of something other than improp-
er action by the State, [then] due process does not require the suppres-
sion of it or its repetitions." *Commonwealth* v. *Wheeler*, 3 Mass. App.
Ct. 387, 392 (1975). Compare *Commonwealth* v. *Gordon, ante* 230, 237
(1978).

defendants under adequate lighting. We consider that finding to be supported by the evidence which was before the judge at the hearing on the motion to suppress. See *Commonwealth* v. *Murphy,* 362 Mass. 542, 547 (1972); *Commonwealth* v. *Lifsey,* 2 Mass. App. Ct. 835 (1974). The confrontation between Horton and the defendants occurred in the course of a continuing police investigation within approximately an hour and a quarter following the robbery. See *Commonwealth* v. *Bumpus,* 354 Mass. 494, 500–501 (1968), cert. denied, 393 U.S. 1034 (1969); *Commonwealth* v. *Leaster,* 362 Mass. 407, 411 (1972). Horton identified the defendants immediately upon observing them at the roadblock, without any prompting or other suggestive conduct by the police. See *Commonwealth* v. *Denault,* 362 Mass. 564, 566 (1972). His descriptions of the robbers, which had been given to the police within a very short time of the robbery, were consistent with the respective appearances of the defendants when apprehended. *Commonwealth* v. *Dickerson,* 372 Mass. 783, 790 (1977). Included in those descriptions were accurate portrayals of the shirts which were worn by all three defendants. See *Commonwealth* v. *Farmer,* 5 Mass. App. Ct. 871 (1977).

In the totality of the circumstances we hold that the confrontation at the roadblock between Horton and the defendants was not so unnecessarily suggestive as to create a very substantial likelihood of mistaken identification. *Neil* v. *Biggers,* 409 U.S. 188, 198 (1972). *Commonwealth* v. *Dickerson, supra* at 791. Therefore, the judge did not err in allowing Horton to identify Alves in court or in allowing Horton to testify regarding his prior identification of Alves on the night of the robbery.

Alves further assigns as error the judge's exclusion at the trial of Officer LaVallee's report on the robbery in which were recorded certain statements which could be viewed as indicating that fingerprints, which were not identifiable as belonging to any of the defendants, had been lifted by Officer DeMoranville at the scene of the

robbery. (See our discussion on the issue of prejudice with regard to the speedy trial claim, *supra* at 578-580.) He contends that the judge's exclusion of the report and the judge's limitation of counsel's questioning of Officer LaVallee with regard to the report prevented him from fully developing a potential defense based on mistaken identification.

The portion of the report which the defendant sought to introduce appears to have consisted of Officer LaVallee's extrajudicial recording of that which had been stated to him by Officer DeMoranville. The defendant's contention that this second-level hearsay is admissible under either the business records or the official written statements exception to the hearsay rule is erroneous. *Kelly* v. *O'Neil*, 1 Mass. App. Ct. 313, 316–317 (1973). *Commonwealth* v. *Happnie*, 3 Mass. App. Ct. 193, 199 (1975).

*Judgments affirmed.*