

ception to the

750

Pro Se #22295
**Owen Walker, Esq.,** Federal Defend
for plaintiff
**Matthew Feinberg, Esq.,** counsel f
plaintiff
**Linda G. Katz, AAG,** counsel for defe
dant
**Kevin J. Sullivan, AAG,** counsel f
defendant

## ORDER OF JUDGMENT
### TAURO, D.J.

For the reasons stated in a memorandum issued this date, petitioner's motions for partial summary judgment and for an evidentiary hearing are denied. Petitioner's claims relating to line-up procedures and jury composition are dismissed, without prejudice, for failure to exhaust state remedies. Respondent's motion to dismiss the petition for a writ of habeas corpus, treated by this court as a motion for summary judgment, is allowed. Accordingly, it is ordered that judgment enter, and judgment is hereby entered, in favor of respondent.

**J. Tauro**
**United States District Judge**

## MEMORANDUM
### TAURO, D.J.

This is a habeas corpus petition under 28 U.S.C. § 2254 to vacate an armed robbery conviction entered in Suffolk County Superior Court on April 8, 1976. Respondent has moved to dismiss for failure to state a claim, while petitioner seeks partial summary judgment and an evidentiary hearing. The primary issues raised are: (1) whether petitioner was denied his right of a speedy trial; and (2) whether the state trial judge denied petitioner his right to counsel.[1]

### I

Petitioner was arrested on an armed robbery charge by the Boston police on September 12, 1974. His indictment followed on October 17, 1974. After petitioner pleaded not guilty on June 3, 1975, the court appointed attorney Melvin Silverman to represent him. After months of representation by Silverman in separate prosecutorial proceedings on similar charges, petitioner moved **pro se** on November 19, 1975 for appointment of new counsel in this case. The court allowed the motion and appointed attorney Reuben Dawkins.

Preliminary proceedings continued. On February 13, 1976, a speedy trial motion in petitioner's behalf was filed and waived by his attorney. A motion to suppress was heard between February 13 and February 18, 1976. Trial began on February 19, 1976, but a mistrial was declared the next day when the trial judge found that the prosecution's exercise of preemptory challenges had been racially discriminatory. On April 5, 1976, immediately before a new trial began, petitioner orally moved to discharge attorney Dawkins. The trial court refused to appoint new counsel, leaving petitioner with the choice of either keeping Mr. Dawkins or representing himself. Petitioner informed the court that he still did not want Mr. Dawkins to represent him. The court then warned petitioner of the procedural technicalities inherent in criminal trials, and urged him to reconsider. After conferring with Mr. Dawkins, petitioner elected to try his own case. The court instructed Mr. Dawkins to remain present during the trial in case petitioner wanted assistance.

After the evidence had been presented and the jury had retired to deliberate, the trial court made a factual finding that petitioner's request for new counsel had been intended solely for delay. About three hours later, the jury returned a guilty verdict.

### II

#### A. The Right to Speedy Trial:

In **Barker v. Wingo**, 407 U.S. 514 (1972), the Supreme Court articulated

---

[1] Petitioner has exhausted his state remedies with respect to the speedy trial and denial of counsel claims. The petition also raises challenges to the composition of the jury and the line-up procedure by which petitioner was identified, but petitioner concedes that he has not yet exhausted his state remedies with respect to these claims. Because resolution of the exhausted claims does not depend on the issues raised by the unexhausted claims, the proper course is to dismiss the unexhausted claims and retain jurisdiction over the exhausted claims. **See Miller v. Hall**, 536 F.2d 967, 969-70 (1st Cir. 1976). Petitioner's claims relating to jury composition and the line-up procedure are, therefore, dismissed without prejudice for failure to exhaust state remedies.

four factors to consider in determining whether a defendant has been accorded a "speedy trial" within the meaning of the Sixth Amendment: (1) the length of delay between arrest and trial; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) prejudice to the defendant. **Id.** at 530-33. Further, the Court established that the length of delay is "to some extent a triggering mechanism," so that "(u)ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors." **Id.** at 530.

**1. Length of Delay:** Here, the delay of approximately nineteen months between arrest and trial, although perhaps not shocking to the conscience, is sufficient to trigger further inquiry. See, **e.g., Commonwealth v. Look,** 402 N.E. 2d 470, 475 (Mass. Sup. Jud. Ct. 1980), **cert. denied,** 101 S.Ct. 91 (1980) (citing cases); **Commonwealth v. Cooke,** 341 N.E.2d 907, 908 (Mass. Ct. App. 1976) (eleven month delay justifying further analysis).

**2. Reasons for Delay:** The record in this case, by itself, is largely silent on reasons for the delay between petitioner's arrest and trial. Pursuant to a June 5, 1981 order of this Court, respondent filed a memorandum with exhibits in an attempt to clarify reasons for the delay. Petitioner submitted a memorandum in reply.

The evidence and submissions reveal no **willful** action on the Commonwealth's part in causing the delay. The Commonwealth's responsibility for the delay, if any, lies in its failure to avoid admittedly overcrowded dockets. As the Court said in **Barker v. Wingo,** 407 U.S. 514, 531 (1972), "more neutral" reasons such as negligence or overcrowded dockets, though significant, "should be weighted less heavily." This is particulary appropriate here, where petitioner himself has contributed to the judicial burden as the defendant in five separate, contemporaneous prosecutions on similar charges for actions taken within a very short time span.

Petitioner is shown by the evidence to bear some responsibility for the delay. For example, petitioner does not deny that his dissatisfaction with his first court-appointed counsel arose several months before he actually requested change of counsel in November 1975. The court's allowance of change at that time does not refute petitioner's responsibility for delay in making his request. Moreover, the trial court made specific findings in April 1976 that petition's request to dismiss his second appointed attorney was made for purposes of delay. That the petitioner bears significant responsibility for allowing the nineteen-month delay is clear.

The absence of willful intent by the Commonwealth to create or exacerbate delay, along with evidence that responsibility traces in part to petitioner, makes the remaining two factors crucial in the Court's balancing test for evaluating petitioner's speedy trial claim.

**3. Assertion of the Right:** Failure to assert the right to speedy trial "will make it difficult" to later prove denial of that right. **Barker v. Wingo,** 407 U.S. 514, 532 (1972). Inaction by a petitioner "must be weighted heavily against him," **Commonwealth v. Look,** 402 N.E.2d 470, 477 (Mass. Sup. Jud. Ct. 1980), **cert. denied,** 101 S. Ct. 91 (1980), since "the speedy trial right is not one which may be kept in reserve in the event that one's belief that the prosecution has overlooked or decided not to pursue his case proves erroneous." **Id.**

That petitioner waited approximately sixteen months before raising the issue is the chief weakness in his speedy trial claim. Numerous opportunities arose during the proceedings during which petitioner could have raised his speedy trial objection. At no time did he do so before February 1976, almost sixteen months after his indictment in October 1974. Such inaction argues heavily against his now claiming denial of his right to speedy trial.

**4. Prejudice to Defendant:** Petitioner contends that the delay caused him prejudice because it resulted in the loss of an alibi witness who allegedly left the Commonwealth and became unavailable sometime during the fall of 1975. Although courts do not require a strict proof that the testimony of a witness lost from delay would have substantially benefitted the defendant's case, see, e.g., **Commonwealth v. Look,** 402 N.E.2d 470, 477 (Mass. Sup. Jud. Ct. 1980), **cert. denied,** 101 S. Ct. 91 (1980), petitioner does bear the burden generally of proving that delay attributable to the Commonwealth caused him prejudice. **Id.** at 475. Petitioner's delay in raising his speedy trial objection makes "much more difficult" his sustaining this burden. **Commonwealth v. Fontaine,** 391 N.E.2d 1234, 1236 (Mass. App. Ct. 1979) (citing **Commonwealth v. Alvez,** 6 Mass. App. 1, 380 N.E.2d 701 (1978) ). The lost witness, petitioner alleges, would have testified that petitioner was not at the scene of the crime. However, the extent to which the witness's testimony might have benefitted petitioner's defense at trial and withstood cross-examination remains uncertain.[2]

Considering the factors relevant for evaluating a speedy trial claim, this Court concludes that petitioner's delay in asserting the right shifts the balance against him and compels dismissal of his right to speedy trial claim.

B. The Right to Counsel:

The question raised by petitioner's right to counsel claim is whether the trial judge was constitutionally required to conduct a colloquy with petitioner to determine why petitioner wanted to discharge his court-appointed counsel. There is a split of authority among the relatively few cases squarely deciding the issue. **Compare United States v. Woods,** 487 F.2d 1218, 1220 (5th Cir. 1973) (conviction reversed for failure to inquire into defendant's allegation that counsel was unprepared) and **Nelson v. State,** 274 So.2d 256, 258-59 (Fla. Dist. Ct. App. 1973) (trial judge must make inquiry in order to protect indigent's right to effective counsel) with **Peters v. Gray,** 494 F.2d 327, 329 (7th Cir. 1974) (no constitutional duty to inquire into reasons for defendant's request for change of counsel).

This Court adopts the view that the in-court colloquy issue is not one of constitutional dimension. Sound principles of judicial administration may well weigh in favor of a general rule that courts should inquire into the criminal defendant's dissatisfaction with appointed counsel. Moreover, it is not difficult to conjure up aggravating circumstances which might render unconstitutional a trial court's failure to inquire. But where, as here, the accused has already changed counsel once, requests new counsel on the day of the trial, and fails to apprise the trial court of particular circumstances warranting further inquiry, the trial court is under no constitutional duty to conduct a colloquy. Petitioner's right to counsel claim, therefore, must fail.

**III**

In view of the foregoing, petitioner's motions for partial summary judgment and on evidentiary hearing are denied. Summary judgment is hereby granted in favor of respondent on the speedy trial and right to counsel claims.[3]

An order will issue.

**J. Tauro
United States District Judge**

---

[2]Question similarly remains about whether petitioner or his appointed attorney could have foreseen the potential loss of this witness and, therefore, whether action to assert his speedy trial right earlier, or to more promptly object to his court-appointed counsel, would have prevented the loss. It is not clear that petitioner ever emphasized to the Commonwealth, either directly or through his attorney, the anticipated importance of (and danger of losing) this witness.

[3]Although respondent's motion is styled a "motion to dismiss," it incorporates a series of facts to which the parties have stipulated. Therefore, this court treats the motion as one for summary judgment. See, **Fed. R. Civ. P.** 12(b).